O'PRY, SOLE SURVIVING DESCENDANT AND SOLE HEIR OF KOUNS, ETC., ET AL. *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 216.   Argued March 12, 1919.—Decided March 31, 1919.

The Act of July 2, 1864, c. 225, 13 Stat. 375, § 8, providing for the purchase for the United States at designated places of the products of States declared in insurrection, at not exceeding three-fourths their New York market value, was strictly in addition, as its title declared, to the Abandoned Property Act of 1863, and not an amendment of that act in the sense of § 162 of the Judicial Code, which gives jurisdiction to the Court of Claims over claims for property taken under the latter act and amendments and sold. P. 328.

The words "addition" and "amendment," as applied to statutes, may or may not have the same meaning, according to the purpose. P. 330.

51 Ct. Clms. 111, affirmed.

THE case is stated in the opinion.

Mr. *George A. King*, with whom *Mr. William B. King* and *Mr. William E. Harvey* were on the brief, for appellants.

Mr. *Assistant Attorney General Brown* for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Section 162 of the Judicial Code, enacted March 3, 1911, provides as follows:

"The Court of Claims shall have jurisdiction to hear and determine the claims of those whose property was taken subsequent to June 1, 1865, under the provisions of the Act of Congress approved March 12, 1863, entitled 'An Act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States,' and Acts amendatory thereof where the property so taken was sold and the net proceeds thereof were placed in the Treasury of the United States; and the Secretary of the Treasury shall return said net proceeds to the owners thereof, on the judgment of said court, and full jurisdiction is given to said court to adjudge said claims, any statutes of limitations to the contrary notwithstanding."

To avail herself of that section Isabel Kouns O'Pry alleged herself to be the sole surviving descendant and sole heir of John Kouns and brought this suit in the Court of Claims and for grounds thereof set forth the following facts: June 6, 1865, George L. Kouns and John Kouns were owners of 900 bales of cotton in two lots, of which 350 bales had been raised in Texas and 550 bales raised in Louisiana, and which after the cessation of

hostilities were brought to New Orleans, June 6, 1865. The cotton was worth the sum of $123,110.

On that date—June 6, 1865—the Act of Congress of July 2, 1864, c. 225, 13 Stat. 375, was in force, § 8 of which made it lawful for the Secretary of the Treasury with the approval of the President to authorize agents to purchase for the United States products of States declared in insurrection at designated places at such prices as might be agreed on with the seller, not exceeding three-fourths of the market value at the latest quotation in the city of New York. [The other provisions of the statute are not necessary to quote.]

The Act of July 2, 1864, was an amendment of the Act of March 12, 1863, entitled "An Act to provide for the Collection of abandoned Property and for the Prevention of Frauds in insurrectionary Districts within the United States." (12 Stat. 820.)

In pursuance of the authority thus conferred the Secretary of the Treasury designated, among other cities, the city of New Orleans as a place of purchase and by a subsequent regulation directed that the agents appointed should receive all the cotton brought to the places designated as places of purchase and forthwith return to the seller three-fourths of the cotton or sell the same and retain out of the price thereof the difference between three-fourths of the market price and the full price thereof in the city of New York.

The agent appointed at New Orleans was Otis N. Cutler, and, on the arrival of the Kouns cotton, Cutler, as such agent, took possession of it and refused to release the same or to allow the owners to have any custody of it until they paid him one-fourth of its market value, being the sum of $30,777.50. They paid the same under protest and it was placed in the Treasury of the United States, where it remains.

June 13, 1865, the President removed by proclamation

all restrictions upon intercourse and trade in products of States theretofore in insurrection and theretofore imposed in the territory *east* [italics ours] of the Mississippi River.

Thereafter the Kounses brought suit in a New York court against Cutler, which was removed to the Circuit Court of the United States for the Southern District of New York. The ground of Cutler's liability was alleged to be that his retention of the cotton and the exaction of money from them was unwarranted in law. They recovered judgment, but it was reversed by the Supreme Court of the United States (*Cutler* v. *Kouns*, 110 U. S. 720), and a new trial ordered. The suit was then dismissed.

The loyalty of the appellants is alleged. The Court of Claims dismissed the suit upon the demurrer of the Government. The court expressed the opinion that the claim did not come either "within the letter or the spirit of section 162 and the correlative statutes" and said: "At the time of this transaction the Kouns firm could not have made any disposal of the cotton in question had it not been for the provisions of said § 8, it being insurrectionary territory. That section prescribed the method and the conditions upon which it might be sold to the Government. The firm complied with those conditions and were doubtless glad to do so. We do not think where one only complies with the law in his transaction with the Government in the sale of cotton and receives all that the law allows him he has any valid claim under § 162 of the Judicial Code."

To fulfill the conditions of necessary parties on account of a doubt expressed by the court, there was an intervening petition by Charles Schneidau, assignee in bankruptcy of George L. Kouns. He adopted the petition of Isabel Kouns O'Pry "and jointly with her claims as therein prayed."

By order of the court the petition was amended and

Schneidau made a party claimant. The Government's demurrer to the petition as amended was sustained.

The case is not in broad compass, involving as it does only the relation and construction of statutes, but it is not easy to state it briefly. The petition recites, as we have seen, that the Kounses in their lifetime brought suit against the agent of the Government, Cutler, who had seized the cotton in New Orleans and exacted payment from them of one-fourth of its value, granting them, however, the indulgence of paying it in three installments, respectively, June 12, June 15, and June 20, 1865. They charged Cutler with an unlawful seizure of the cotton and an unlawful exaction of the money. They obtained judgment in the Circuit Court, but the judgment was reversed by this court, 110 U. S. 720, and the following is, so far as material, a summary of the decision in the case:

In consequence of the Act of July 13, 1861, c. 3, 12 Stat. 255, it was lawful for the President to declare that the inhabitants of all States in rebellion against the United States were in a state of insurrection and that all commercial intercourse between them should cease and be unlawful so long as such condition of hostilities should continue. And August 16, 1861 (12 Stat. 1262) the States of Texas and Louisiana were declared to be in like condition and intercourse was forbidden between them and other States and parts of the United States. On April 26, 1862, the city of New Orleans, however, was occupied by the National forces and from that date was excepted from the operation of the Non-intercourse Act.

In this state of affairs Congress passed the Act of July 2, 1864, referred to in the petition, § 8 of which authorized the purchase of products of States declared in insurrection, which included the cotton in suit, and it was seized by virtue of such authority and the payments mentioned

exacted. It was contended that the cotton was exempt
from such action by proclamation of the President of.
June 13, 1865. The contention was rejected, the cotton
not being, as it was said, the product of territory *east* of
the Mississippi River. It was, however, further urged
that the President's proclamation of June 24, 1865, re-
moved all restrictions as well from products of territory
*west* of the Mississippi River. To this it was replied that
upon the arrival of the cotton in New Orleans the rights
of the Government to it became fixed and that at such
time "one-fourth its value was as much the property of
the government as the other three-fourths were the
property of the defendants in error [the Kounses]. No
proclamation of the President could transfer the property
of the government to them." It was hence decided that
Cutler "had authority under the law and regulations of
the Treasury Department to exact the money" which
the suit was brought to recover. The defense of the stat-
ute of limitations was also sustained.

It is now asserted that notwithstanding such decision
a claim has accrued to appellants by virtue of § 162 of
the Judicial Code upon which they are entitled to recover.
It will be observed by reference to that section that the
Court of Claims is given jurisdiction of claims of those
whose property was taken subsequent to June 1, 1865,
under the provisions of the Act of March 12, 1863, "and
Acts amendatory thereof," where the property was sold
and its net proceeds were placed in the Treasury of the
United States, and they are directed to be returned upon
judgment rendered for the claimant. Appellants invoke
the relief of these provisions by the contention that the
cotton was taken under the provisions of the Act of
March 12, 1863, because the Act of July 2, 1864, was an
amendment to it, and that therefore the provision of
§ 162 of the Judicial Code is completely satisfied; in
other words, that the money exacted was taken under the

Act of March 12, 1863, "and Acts amendatory thereof." It is further contended that the conditions of § 162 being thus satisfied it is no answer to say that the seizure of the cotton was legal, it being the intention of Congress to declare that even in such case "the proceeds should be returned to the owners." And this contention counsel offers as an answer to *Cutler* v. *Kouns, supra*, and that Congress having by § 162 opened the doors of the Court of Claims "to claimants whose property had been seized after June 1, 1865, they can no longer be met with the defense that because the seizure was lawful when made, there can be no recovery on account of it. To sustain such a defense would be to 'keep the word of promise to the ear and break it to the hope.'" The Government opposes the contentions.

The Act of March 12, 1863, 12 Stat. 820, is entitled "An act to provide for the Collection of abandoned Property and for the Prevention of Frauds in insurrectionary Districts within the United States." Its first section empowers the Secretary of the Treasury to appoint a special agent or special agents to collect and receive all abandoned or captured property in any State or Territory in insurrection, with an exception not material. Section 2 provides that the property so received or collected may be put to public use or sold at public auction and the proceeds thereof put into the Treasury of the United States. By § 3 a bond may be required of the agent or agents, who may be required to keep a book or books of accounts showing those from whom the property was received, the cost of transportation and proceeds of sale. It is further provided that the owner of the property may at any time within two years prefer a claim for the proceeds thereof and upon proof of loyalty receive the residue of the proceeds.

It will be observed that the act had a special purpose and was directed to the receipt and collection of property

in a particular condition, either abandoned or captured, recognizing, however, that there might be a just claim to it, but limiting the assertion of the claim to two years after the suppression of the rebellion.

The Act of July 2, 1864, 13 Stat. 375, describes itself to be "An Act in addition to the several Acts concerning Commercial Intercourse between loyal and insurrectionary States, and to provide for the Collection of captured and abandoned Property, and the Prevention of Frauds in States declared in Insurrection." The act, therefore, is declared to be an "addition" to preceding legislation, not an amendment to it. Is an addition the same as amendment? We are informed by the dictionaries that in addition the added parts remain independent and by amendment there is change and, it may be, improvement. The words and the processes they respectively describe may, however, be regarded as roughly or even accurately interchangeable and in investigating the meaning of legislation we must regard that possibility and resolve a doubt in the words by the purpose of the legislation. In other words, whatever the relation of the statutes, their purpose must be looked to to determine the application to them of § 162. So looked to, we agree with the Government that the purpose of the Act of July 2, 1864, demonstrates the contrary of the contention of appellants, and that the act was strictly in addition to prior acts and not an amendment of the Act of March 12, 1863, in the sense asserted. The latter act applied to a different situation. The cotton collected under it and to which its provisions applied might be the property of those innocent of disloyalty but victims of the disorder and violence of the times, and the Government constituted itself a trustee for them and gave them the opportunity, at any time within two years after the suppression of the rebellion, to establish their right to the proceeds, requiring of them nothing but proof of loyalty and ownership. *United States*

323.                           Syllabus.

v. *Anderson,* 9 Wall. 56, 65; *United States* v. *Padelford,* 9 Wall. 531; *United States* v̂. *Klein,* 13 Wall. 128.

The cotton in the present case, unlike that to which the Act of March 12, 1863, applied, was the subject of a business enterprise and taken to a market opened by the United States forces upon the conditions expressed in the Act of July 2, 1864—that is, that its owners should turn over to the Government one-fourth of the cotton, or its money equivalent, which would immediately become the property of the United States. *Cutler* v. *Kouns, supra.* The conditions in the two situations, therefore, are in broad contrast and it could not have been the intention of § 162 to confound the conditions. The section did no more than remove the bar of limitation of time to sue that was given by the Act of March 12, 1863. It did not intend to transfer property that had become that of the United States.

*Judgment affirmed.*