[Civ. No. 484. Fourth Appellate District.—August 10, 1931.]

A. H. WALLACE, Appellant, v. THE BOARD OF TRUS-
TEES, Known as THE CITY COUNCIL OF THE
CITY OF OCEANSIDE, et al., Respondents.

Head, Wellington & Jacobs and Dean Sherry for Appellant.

J. C. Hizar for Respondents.

BARNARD, P. J.—The petitioner filed in the superior court a petition for a writ of *mandamus* to compel the City Council of the City of Oceanside to call a recall election. The petitioner recites that he, and other qualified electors, prepared and circulated a petition for the recall of H. D. Brodie and E. A. Walsh as Trustees and Members of the City Council of the city named. It is alleged that the petition was signed by qualified voters of said city in excess of twenty-five per cent of the entire vote cast in said city at the next preceding regular municipal election; that the petition was filed with the city clerk on June 27, 1930; that on July 9, 1930, the city clerk reported said petition to the City Council as having an insufficient number of signatures thereon; that the City Council on July 9, 1930, passed a motion referring the petitions back to the petitioners so that they might be amended within ten days; that on July 11, 1930, a supplemental or amended petition was filed with the city clerk; and that on July 23, 1930, the city clerk certified the original petition as having a sufficient number

of signatures. It is also alleged that a demand had been made upon the City Council to call an election, but that such demand had been refused. An answer was filed by the respondents, and at the hearing permission was given to amend the petition so as to allege that two separate petitions for recall had been filed, one directed against Brodie and the other against Walsh. At the conclusion of the petitioner's evidence a motion for a nonsuit was made and granted and a judgment entered denying the application for a writ. From this order and judgment this appeal is taken.

The two petitions for recall were admitted in evidence and, under stipulation, the original petitions have been transferred to this court for our inspection. The petitioner herein testified that he signed both petitions for recall; that each of said petitions were read to him before signing; and that the same were signed in the presence of the circulator, Katherine M. Clark. Katherine M. Clark testified that this petitioner signed the two petitions for recall in her presence, and that she read the petitions to him at the time he signed. The city clerk of Oceanside testified that the petitions were filed; that he reported to the City Council that the signatures on the two petitions were insufficient, and that the City Council passed a motion that these petitions be referred back to the petitioners so that they might be amended within the ten-day period provided by law.

The appellant contends that the two petitions for recall are *prima facie* evidence of petitioner's right to have a recall ordered, and that the evidence shows a substantial compliance with the requirements of law. ■ It is settled that where a petition is filed which substantially conforms to the provisions of the statute, and which is properly certified by the clerk as containing a sufficient number of signatures, the City Council has no discretion as to the calling of an election (*Martin* v. *Board of Trustees*, 96 Cal. App. 705 [274 Pac. 1015]). ■ We think, however, that in a number of respects the evidence here fails to show a compliance with the law governing such proceedings. (Stats. [Ex. Sess.] 1911, p. 128.)

The law provides that within ten days from the date of filing such a petition the clerk shall examine and compare the signatures thereon with the records of registration and that he shall attach to the petition his certificate showing the

result of his examination. It also provides that if by the clerk's certificate the petition is shown to be insufficient, additional papers may be filed within ten days from the date of such certificate. No certificate of insufficiency appears on either of the petitions here involved. While the City Council ordered the petitions returned for the purpose of being amended and while another sheet with additional signatures was filed on July 11, 1930, we are unable to tell when the ten-day period started to run, if at all.

The law provides that all of the signatures need not be on the same paper, but it also provides that "each" paper shall have an affidavit by the circulator thereof showing, among other things, that the persons whose names appear had actually signed the same. In each of the petitions before us, as originally filed on June 27th, there are fourteen sheets of paper pasted together end to end. At the top is a copy of the petition itself, followed by nine sheets of signatures. Then follows an affidavit by Katherine M. Clark, to the effect that she is a qualified elector; that she circulated "the foregoing paper" and saw the signatures thereon written, and that each is the genuine signature of the person whose signature it purports to be and of a registered qualified elector of the City of Oceanside. Then follow three more sheets with a similar affidavit by one Rickard, as circulator, and then follow two more sheets with a similar affidavit by one Peters. The other petition is in similar form, except that the first circulator's affidavit seems to refer to eight pages, the second to four pages, and the third to two pages. The entire document is marked as filed in the office of the city clerk on June 27th and contains no certificate by the city clerk as to any insufficiency in the number of signers. At the end of the document is a certificate of the city clerk dated July 23, 1930, to the effect that he had examined the "foregoing petitions"; that he had compared the signatures thereon with the affidavits of registration, and that the "signatures on said petition, as amended, represent more than 25% of the total number of votes cast at the last general municipal election" in said city. With each original petition, but not attached thereto, is another sheet labeled "Supplemental Petition", containing additional names, and marked as filed in the office of the city clerk on July 11, 1930. No certificate

of any kind whatever is attached to the supplemental petitions. If each of the fourteen pages in each of these petitions be considered as "each paper", there is no affidavit by a circulator on eleven of them. If the entire fourteen pages be considered as one paper, there is not "an affidavit" by the circulator, but three separate affidavits each apparently referring not to the entire paper but to a certain portion thereof only.

It further appears that Katherine M. Clark, who apparently circulated nine sheets of the one petition and eight sheets of the other, testified that she had a number of sheets with headings on, that is to say with a copy of the petition at the head thereof; that none of the signers signed the petition without the heading being on that sheet; and that she then cut off the headings and pasted the sheets together. In *Fox* v. *Board of Supervisors*, 49 Cal. 563, the following language is used:

" 'The petition, signed by qualified electors of the county equal in number to at least one-third of all the votes cast in the county at the last preceding general election,' is the first step required by the statute, for it is only 'after receiving such petition' that it becomes the duty of the Board to order the election. The petition presented to the Board must be that petition which was signed by the petitioners. Both signature and presentation are necessary. In this view the identity of the instrument presented as being that which came from the hands of the petitioners is indispensable. To say that, though the signers did not affix their names to the petition presented, they did affix them to another and similar petition not presented to the Board, is no answer; nor does it satisfy either the terms of the statute or its obvious policy, which was to shut the door against frauds which would inevitably occur if the practice of detaching signatures from one petition and attaching them to another were permitted.

"If numerous petitions with similar headings be circulated for signatures and if the headings from all the petitions except one be cut off, and all the names, without the knowledge or consent of the signers, be pasted to the one heading, and in that form presented to the Board, it is clear that the paper thus presented, was not 'signed' by those whose signatures were affixed to it by pasting. Whether

they signed another paper with a similar heading, will rest entirely in parol, and can only be ascertained by oral proofs. If such proof will suffice as to a portion of the petitioners, it will be equally effective as to all. We might then have the case of a petition, never in fact signed by any one; and the omission could be supplied only by oral proof that the petitioners had signed other similar petitions. If a practice of this kind was tolerated, it would open the door to numerous frauds, and would result in substituting oral proof for that which the statute requires to be in writing.''

In *People* v. *Town of Berkeley*, 102 Cal. 298 [23 L. R. A. 838, 36 Pac. 591, 593], the court said:

''There are some conflicting authorities in other states, and counsel for appellant insist that the decision in the Fox case should be overruled. It has, however, so far as we know, remained unquestioned in this state for nearly twenty years, and seems to be based on sound and convincing reasoning. It should, therefore, in our opinion, be upheld and followed.''

While the language in those cases was used concerning petitions for a somewhat different purpose than the petitions here involved, they were of a similar nature and for a generally similar purpose, and we think the legal principles governing are the same. To here hold otherwise would be to open the door to fraud and to make easily possible the use, on a petition for a recall, of lists of signatures that had been obtained for an entirely different purpose. The law governing petitions for recall is most liberal and not only permits separate papers to be used, but as many as may be desired. However, the precautions provided for the purpose of insuring their genuineness, and that the signers thereof knew what they were signing and intended their signatures for the particular purpose in view, are simple, easily complied with and must be held to be essential. In our opinion a substantial compliance with the requirements of the statute is not here shown.

 The only other point raised by appellant is that the court erred in granting the motion for a nonsuit, it being insisted that the grounds for the motion were not stated. The motion was made as follows:

''We move for a nonsuit at this time on the grounds specified in our objections to the introduction of the petitions.''

The record shows that shortly before the making of this motion an objection had been made to the introduction of the two petitions in evidence, consisting of seventeen objections, taking up more than three pages of the transcript, and including the errors heretofore referred to in this opinion. While it has been held that a motion for a nonsuit which fails to state the grounds thereof is not sufficient (*Mattson* v. *Mattson*, 181 Cal. 44 [183 Pac. 443]), we are of the opinion that the grounds for this motion were sufficiently stated by reference, and that it was not necessary to again repeat what had so recently been stated. ▪ In addition, the order made and appealed from not only granted the motion for nonsuit, but went on to deny the application for a writ of mandate. The latter portion of the order was correct, in view of the petition itself and the other evidence before the court.

For the reasons stated the order and judgment appealed from are affirmed.

Jennings, J., and Marks, J., concurred.