ABRAHAM P. BAB, PLAINTIFF, v. ETHEL M. HOYT, CITY CLERK OF THE CITY OF HACKENSACK, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided June 20, 1963.

532

*Mr. James A. Major* for plaintiff (*Messrs. Major & Major,* attorneys).

*Mr. George A. Brown* for defendant.

*Mr. Theodore W. Trautwein* for Kazmer Wysocki and Charles E. Freeman, intervenors.

WAESCHE, J. S. C. This is a proceeding in lieu of prerogative writs to compel the city clerk of Hackensack, N. J. to examine a recall petition filed with her and to certify the result of her examination as required by *R. S.* 40:84–12.

On May 28, 1963 a petition was filed with the city clerk entitled, "Petition for Recall of Councilmen of the City of Hackensack and the Election of Successors." The petition contains the names of two councilmen of the City Council of Hackensack, and contains a general statement of the grounds upon which their removal from office is sought. The petition then reads as follows:

"NOW, THEREFORE, we the undersigned voters of the City of Hackensack, in accordance with the provisions of Revised Statutes of New Jersey, Title 40:84–12 to 19 inclusive, demand the removal of and the election of successors to Councilmen Kazmier Wysocki and Charles E. Freeman for the reasons and on the grounds above stated and we the undersigned voters of the City of Hackensack request that a recall election shall be held in the event said Councilmen do not resign or their tender of resignations shall not have been accepted by the City Council, and we the undersigned voters of the

City of Hackensack do further request that the following proposals for recall shall be placed on the ballots of such election, viz.:

'Shall Kazmier Wysocki be removed from the office of Councilman by recall?'

'Shall Charles E. Freeman be removed from the office of Councilman by recall?' "

The city clerk refused to certify the result of her examination of the petition on the ground that two councilmen were named in the petition for removal from office, and therefore the petition did not comply with the requirements of the law and was invalid. There must be a substantial compliance with statutory procedure for the recall of municipal officers. In the case of *Gibson v. Campbell*, 136 *Wash.* 467, 241 *P.* 21 (*Wash. Sup. Ct.* 1925), the court said that "the question as to whether or not the proceedings looking to the recall of an officer comply with the constitutional and statutory law upon the subject is purely and wholly a judicial question. The power to hold an election proceeds from statute, and until the proper legal steps have been taken the county auditor ⌊the city clerk in the case now before this court⌋ has no right to call an election." See also *Wallace v. Board of Trustees*, 116 *Cal. App.* 82, 2 *P.* 2d 426 (*Cal. D. Ct. App.* 1931) ; *Richard v. Tomlinson*, 49 *So.* 2d 798 (*Fla. Sup. Ct.* 1951).

The City of Hackensack is governed under the Municipal Manager Form of Government Law, R. S. 40:79–1 *et seq.* (*subtitle* 5 of *Title* 40). R. S. 40:81–6 provides as follows:

"A member of the municipal council after having been in office for at least one year may be removed from office by a recall petition prepared and approved by the voters of the municipality in the manner hereinafter provided for recall procedure."

R. S. 40:84–12 provides as follows:

"The procedure to effect the removal of councilmen in addition to other methods provided by law shall be as follows: A petition signed by voters entitled to vote for a successor to the incumbent sought to be removed * * * demanding the removal of and the election of a successor to the councilman named in the petition, shall be filed with the municipal clerk."

*R. S.* 40 :84–15 provides as follows:

> "If the removal of more than one councilman is sought the same provisions for submitting to the electors the question and direction hereinbefore described shall be repeated in the case of each councilman concerned and their position on the ballot for their recall shall be in the order of the filing of the petition with the municipal clerk."

██ The law is quite clear that a recall petition for the removal of a single councilman must be prepared and approved by the voters of the city in the manner provided by the statute, *R. S.* 40 :81–6. If the removal of more than one councilman is sought, the same procedure for the removal of one councilman is repeated in the case of each additional councilman whose removal is sought, *R. S.* 40 :84–15. That procedure is the filing of a petition with the city clerk naming the "councilman" whose removal is sought, which petition must be signed by the voters entitled to vote for a successor to the "incumbent sought to be removed." It seems to me that the law is clear that only one councilman can be named in one recall petition.

█ The procedure for the removal of a councilman is consistent with the policy of the Municipal Manager Form of Government Law for the election of a councilman. A candidate for election to the city council is nominated by petition signed by persons who voted at the last preceding general election. Each nominating petition can contain the name of only one candidate for the city council, *N. J. S. A.* 40 :84–5. The names of the candidates for election to the city council appear upon the ballots of the election in the order in which their nominating petitions were filed with the city clerk, *R. S.* 40 :84–6, and no bracketing of candidate's names is permitted on the ballot, *R. S.* 40 :84–7.

In the case of *State ex rel. Brown v. Howell,* 134 *Tenn.* 93, 183 *S. W.* 517 (*Sup. Ct.* 1916) the court had before it an application for a writ of *mandamus* to order an election to remove from office commissioners of the City of Nashville.

In its opinion, the court said:

"The impropriety and injustice of proceeding against a number of persons in one petition is manifest. It is subject to objection on the ground that a voter, when presented with the petition, must judge as to the question of whether he shall ask for a removal of a number of men or else submit to the retention in office of all. He is not given the clear-cut right to pass on each individual and exercise his own individual judgment as to that particular person. The fact that the petition stated the same cause of removal against all does not cure it of this objection. The voter ought to have the right to judge singly against each officer if he so desires. The Legislature evidently so intended.

The same right to exercise independent judgment on each separate official must exist in the initiatory step of removal, as effectively as that the voter may so exercise at the ballot box his right and duty to elect a new official or recall an old one. As well might it be said that the voter shall be compelled to vote for a number of men jointly and be denied the right to vote as to each one singly, as to say he may not judge of the propriety of holding in office each individual official who had been previously elected. The initial step in the removal is quite as important as the final vote in the recall.

The official also should have the right to be judged alone by his fellow citizens as to his own merits or demerits. That the law-making body so intended in providing the recall we have no doubt. To construe it otherwise would be to attribute to the Legislature the enactment of an unwise and intolerable law.

\*        \*        \*        \*        \*        \*        \*        \*

This law is intended as a simple, direct, and just method of declaring a public official unfit to hold a given office, and gives 25 per cent. of the voters the power to stamp him with disapproval. When so disapproved, he is by that act presented to all the voters for recall. How important it is, then, to the official himself, as well as to the public, that such power be so administered as to prevent political combinations, those who object to one official combining with those who object to another.

This is not a mere matter of pleading, requiring a demurrer or plea in abatement. In their initiatory petition there was a failure to comply with the statute providing for the recall. The petition being improperly directed at a number of officials jointly, which is not permitted or provided for in the statute, it was a void proceeding."

In the case of *McCush v. Pratt,* 113 *Wash.* 7, 192 *P.* 964 (*Wash. Sup. Ct.* 1920), the court had before it for consideration a petition for an election to recall members of the board

of directors of Bellingham School District No. 301. In its opinion, the court said:

"The excerpts quoted from the Constitution and the statutes indicate plainly that, where there is an attempt to recall two or more public officers, separate petitions must be signed and filed against each officer. The provisions of the Constitution and of the statutes refer to 'public officer,' the petition demanding 'his' recall, at all times using the singular, and never the plural. Nowhere is it provided for charges or petitions against 'officers' or for 'their' recall. The same thought is carried through other portions of the Constitution and statutes which are not quoted. From the standpoint of the citizen there is a good reason why separate petitions should be filed against each officer who is sought to be recalled. If the officers are covered jointly in a petition the voter, when it is presented to him, must either sign to recall all or none. He may desire a recall of one and feel that it is his duty to so sign. He may believe that the charges against the other or others are not well-founded, and that the petition for their recall should not be signed. In order to exercise his judgment in one respect, he must go counter to his conviction in another. The recall provisions of the Constitution and of the statutes should not be given the construction which would subject the voter to this embarrassment unless the language used makes such a holding imperative. There is also a reason so far as the officer sought to be recalled is concerned why the petition should be separate and not joint. The official should have the right to be judged by his fellow citizens as to his own merits or demerits. He should not be recalled because of the shortcoming of some other officer."

In the case of *Bricker v. Banks,* 98 *Cal. App.* 87, 276 *P.* 399 (*Cal. D. Ct. of App.* 1929), the court had before it the application for a writ of *mandamus* to compel the city clerk of the City of Stockton to call an election for the removal of members of the city council. In its opinion the court said:

"Article 28 of the Stockton Charter, relating to the recall of officers, uses the singular number throughout. It provides that a recall election may be initiated by 'a petition signed by qualified electors, equal in number to twenty per centum of the entire votes cast at the last preceding general municipal election.' This provision contemplates, of course, that the petition shall represent a fair expression of the will of such electors. When a petition for the recall of several officers is presented to an elector for his signature, if he is of the opinion that some, but not all, of such

officers ought to be recalled, he is afforded no means of expressing his will. He must either sign the petition demanding the recall of all, some of whom he believes are faithful, or refuse to sign it, although he may know that one or more of such officers are corrupt. It ought not to be held that the law puts a voter to such a choice in the absence of an express provision to that effect. * * * Of course, the question of recalling several officers may be submitted at the same election, where separate petitions are presented."

For the above reasons there will be a judgment in favor of the defendant dismissing the complaint.