114 N.J. Super. 421 (1971)
276 A.2d 868
IN THE MATTER OF PETITION OF THOMAS F.X. SMITH, MUNICIPAL CLERK OF THE CITY OF JERSEY CITY, IN RE RECALL ELECTION OF THE CITY OF JERSEY CITY.
THOMAS F. McGOVERN AND ANIELLO R. PECORARO, INDIVIDUALLY AND INCUMBENT COUNCILMEN OF THE CITY OF JERSEY CITY, PLAINTIFFS-APPELLANTS,
v.
THOMAS F.X. SMITH, CITY CLERK OF THE CITY OF JERSEY CITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1971.
Argued March 30, 1971.
Decided April 28, 1971.
*423 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. Benjamin H. Chodash argued the cause for Thomas J. Whelan, Mayor of Jersey City.
Mr. Harold J. Ruvoldt, Jr. argued the cause for Thomas F. McGovern and Aniello R. Pecoraro, individually and incumbent councilmen of Jersey City (Messrs. Ruvoldt and Ruvoldt, attorneys).
Mr. James F. Ryan, Corporation Counsel of Jersey City, argued the cause for Thomas F.X. Smith, City Clerk of Jersey City.
Mr. Floyd F. Lombardi argued the cause for Citywide Independent League (Mr. Ralph P. Messano, attorney).
*424 Mr. William J. Brennan, III argued the cause for Community Action Council (Messrs. Bernard M. Hartnett, Jr., Gerald P. Lally and Mr. Brennan, attorneys).
The opinion of the court was delivered by LEWIS, P.J.A.D.
This consolidated proceeding embraces three appeals from four separate orders of the Law Division regarding the recent effort of the Citywide Independent League (C.I.L.) and the Community Action Council (C.A.C.), two civic and political organizations of the City of Jersey City (city), to recall the mayor and seven of the nine councilmen of the city. The matters here under review have come before us as the result of numerous motions and petitions seeking emergent relief, leave to appeal and the consolidation and acceleration of the several appeals involving the mayor and two ward councilmen.
In view of the complexity of the proceedings and particularly because the major issues raised are of first impression in this State, a recital of the significant events productive of this litigation is essential.
On January 11, 1971 the C.I.L. filed a petition with Thomas F.X. Smith, the municipal clerk of the city (clerk), seeking the recall of Mayor Thomas J. Whelan, Ward Councilmen Thomas F. McGovern, Aniello R. Pecoraro, Francis Quilty and William Massa, and Councilmen-at-Large Thomas Flaherty, John Jaroski and John Kelaher. The latter five incumbents did not participate in these proceedings. The petition directed against Mayor Whelan was subscribed by 30,362 signatures. The petition directed against McGovern contained 5,945 signatures, and the petition directed against Pecoraro contained 3,384 signatures.
On January 29 the clerk certified the results of his examination of the Whelan petition. He reported that of the signatures filed, only 17,089 were acceptable in tabulating the 26,870 signatures required to effect the mayor's recall. It was his conclusion that the required number, statutorily prescribed *425 by N.J.S.A. 40:69A-169 as "(25%) of the registered voters of the municipality," represented 25% of the registered voters of the city on November 3, 1970, the date of the last general election in the city.
The clerk notified the C.I.L. of the deficiency so as to enable it to amend the original petition within the ten-day period allowed by N.J.S.A. 40:69A-170. On February 8 the C.A.C., with the permission of the C.I.L., filed a separate petition containing 22,037 signatures as an amendment to the original C.I.L. petition. The following day the clerk made a motion before Judge Larner of the Law Division for a declaratory judgment concerning the permissibility of the amendment procedure. At the hearing thereof on February 10 the court determined that inasmuch as the petitions represented the will of the signers, i.e., the voters-at-large, and not that of the groups soliciting the signatures, and because the statements of the grounds for recall were substantially the same in both petitions, the consolidation of the two petitions by way of an amendment was permissible. An appropriate order to that effect was entered February 17. On February 25 a notice of appeal from that order was filed by Mayor Whelan.
On February 11 the clerk certified the results of his examination of the C.I.L. petitions against the ward councilmen. His report recited that of the 5,945 signatures filed against McGovern, only 2,447 were validated. This sum fell short of the required 5,296 signatures. Additionally, the clerk's report stated that of the 3,384 signatures filed against Pecoraro, only 1,101 were validated, thus failing to meet the required number of 3,019. Again the clerk notified the C.I.L. that its petitions were deficient.
On February 21 the C.A.C. filed two other separate petitions, this time as an amendment to the original petitions against McGovern and Pecoraro. The next day McGovern and Pecoraro instituted a suit seeking injunctive and declaratory relief to restrain the clerk from examining or otherwise *426 acting upon the petitions seeking their recall, on the grounds that the C.A.C. amendment was impermissible and that the C.I.L. petitions were so permeated with fraud as to be invalid in their entirety. After the matter was heard, the Law Division, on February 27, denied their application. In doing so Judge Larner indicated that his previous determination of the clerk's original motion for a declaratory judgment, involving the Whelan petitions, was dispositive of their contention regarding the permissibility of the amendment. Additionally, he noted that the fraud alleged would not serve to vitiate the entire petition, notwithstanding that such fraud might prove to be extensive, on the theory that the electorate-at-large should not be penalized for the misconduct of particular individuals. He distinguished his decision from those cited cases wherein petitions were totally invalidated, on the theory that there the perpetrators of the fraud were candidates for the offices involved.
On March 1 McGovern and Pecoraro sought leave from this court to appeal from the February 27 order of the Law Division. Thereafter, on March 4 we entered an order granting emergent relief, directing the clerk to refrain from certifying the validity of any petitions or fixing a date for a recall election until further ordered.
On March 3 the Law Division enjoined the clerk from fixing a date for the recall election of the mayor pending a final determination of his appeal to this court. On March 5 we entered an order which directed the clerk to announce the results of his examination of the petitions against the mayor but restrained him from certifying those results and from fixing a date for recall. The order further provided that oral argument of the mayor's appeal would be heard on March 23. On March 6 we directed that the McGovern and Pecoraro motion for leave to appeal also be listed for argument on that date.
Subsequently, the C.A.C. filed its notice of motion for leave to appeal from two orders of the Law Division dated *427 March 5 and March 11, whereby it was respectively determined that the relevant percentage of the voters of the city was to be computed with reference to the date of the last general election and that the affiants required to attest to the petition sheets circulated in the city wards had to be residents of those wards. The C.A.C. also submitted a petition to this court for emergent and other relief related to said order. On March 12 we granted leave to appeal from the orders of March 5 and March 11 and set down a hearing for March 30. Thereafter, on March 17, the C.I.L. submitted a petition for leave to appeal which, in due course, was granted.
Oral arguments were heard on March 23 and 30, 1971, and on the latter date, with the consent of all parties, this court sua sponte ordered that the several instant appeals be consolidated; an appropriate order has been filed. Hereafter, for convenience of reference and except as otherwise provided, the C.A.C. and C.I.L. shall be designated as petitioners and the mayor and councilmen shall be referred to as incumbents.
Essentially, this appeal requires the resolution of the following four issues: (1) whether the consolidation of the C.I.L. and C.A.C. petitions qualifies as an amendment within the meaning of N.J.S.A. 40:69A-170; (2) whether the presence of fraud in certain C.I.L. petition sheets, as occasioned either by the actions of the solicitors of signatures, the statutory affiants attesting thereto or the signers of the petition, or all of the above, invalidates the entire petition; (3) whether the date of the last general election preceding the filing of the petitions is the appropriate standard with reference to which the relevant percentage of "registered voters" is to be computed, and (4) whether the affiant of a petition seeking the recall of a ward councilman is required to be either a signer of the petition or a resident of the ward, or both.
Preliminarily, we note that our determinations in these respects substantially accord with those expressed in the several oral opinions of Judge Larner for the Law Division. We shall consider the issues seriatim.

*428 I
In substance, incumbents argue that the provision of N.J.S.A. 40:69A-170, allowing the amendment of petitions, does not embrace the consolidation of two separate petitions. Their contention is meritless and their reference to generally unrelated statutory provisions in support of a contrary conclusion is not helpful.
As used in common parlance, the word "amend" has been broadly defined to include such activities as: to repair, to restore, to free from faults, to alter in any way, and to improve. Webster's New International Dictionary (2d ed. 1959). It is plain that the manner of performing these activities can include addition or subtraction. To exclude one or the other is manifestly unreasonable. Cf. United States v. Lapp, 244 F. 377, 383 (6 Cir.1917). Specifically, with regard to amendment by addition, it has been observed that the words and processes described by addition and amendment may "be regarded as roughly or even accurately interchangeable." O'Pry v. United States, 249 U.S. 323, 330, 39 S.Ct. 305, 307, 63 L.Ed. 626 (1919). Furthermore, it has also been noted that even an act independent and original in form (the present "consolidation") is to be treated as amendatory. 1 Sutherland, Statutory Construction (3d ed. 1943), § 1901 at 325; see United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931).
There is no cogent reason for excluding addition or consolidation as a means of amendment and this is especially true where the petitions involved share common grounds of origin and represent the interests of the community-at-large. To hold otherwise would frustrate the public will and would contravene our oft-stated policy to liberally interpret statutory provisions pertaining to recall in favor of the electorate. Westpy v. Burnett, 82 N.J. Super. 239, 246 (App. Div.), aff'd o.b. 41 N.J. 554 (1964); see Wene v. Meyner, 13 N.J. 185, 197 (1953); Giuliano v. Reichenstein, 110 N.J. Super. 489, 498 (Law Div. 1970); Stone v. Wyckoff, 102 N.J. *429 Super. 26, 33 (App. Div.), certif. den. 52 N.J. 254 (1968); 4 McQuillin, Municipal Corporations (3d ed. 1968), § 12.251 at 312.

II
The resolution of the question concerning the effect of the alleged fraud on the validity of the entire recall action is essentially a matter of philosophy involving a choice between, on the one hand, allowing every qualified citizen to effectively register his discontent with the elected officials representing him and, on the other hand, limiting the possibility of fraud in such endeavors to the minimum by striking down all such protests because some are infected with fraud. Incumbents' reliance on the authority of McCaskey v. Kirchoff, 56 N.J. Super. 178 (App. Div. 1959), in support of the latter alternative, is misplaced. See In re Petition of Job, 111 N.J. Super. 170, 172 (App. Div.), certif. den. 57 N.J. 124 (1970). That case, as well as Weisberger v. Cohen, 22 N.Y.S.2d 1011 (Sup. Ct. 1940), aff'd sub nom. Matter of Weisberger v. Cohen, 260 App. Div. 392, 22 N.Y.S.2d 835 (App. Div. 1940), was concerned with the treatment of petitions secured in behalf of the candidacy of political aspirants who themselves had knowingly participated in the procurement of fraudulent signatures. Cf. Matter of Collins v. Heffernan, 187 Misc. 165, 167, 63 N.Y.S.2d 692, 694-695 (Sup. Ct. 1946), which dealt with forgeries gathered by agents, employees and friends of candidates. The decisions to completely invalidate those petitions seem to have been predicated upon the equitable principle that a wrongdoer should not benefit from his own wrongdoing.
Additionally, we note that unlike those foreign jurisdiction cases cited by incumbents, the instant matter does not turn solely upon the fraud of the petition circulators. Here, the alleged fraud is stated in general terms, and, although we are satisfied that there are spurious and forged names present in several petitions, the source or sources of the fraud remain unidentified. Moreover, it is significant that fraud was not *430 the exclusive basis for the clerk's rejection of many of the signatures. His reasons for refusing to validate certain signatures include: "Not Registered," "Signature does not compare with that reflected in Bureau of Elections Binder," "No such address," "Out of City," "Illegible," "Duplicates," "Generally no address or name or similar contingency" and "Not Eligible."
In other jurisdictions the courts have taken divergent views respecting the effect of various types of fraud on petitions of nomination, initiative and referendum. See, e.g. Sturdy v. Hall, 204 Ark. 785, 164 S.W.2d 884 (Sup. Ct. 1942), and Sturdy v. Hall, 201 Ark. 38, 143 S.W.2d 547 (Sup. Ct. 1940), reconciled in Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (Sup. Ct. 1950); Barkley v. Pool, 103 Neb. 629, 173 N.W. 600 (Sup. Ct. 1919); State, ex rel. v. Graves, 90 Ohio St. 311, 107 N.E. 1018 (Sup. Ct. 1914); State, ex rel. Donofrio v. Henderson, 4 Ohio App.2d 183, 211 N.E.2d 854 (Ct. App. 1965); State ex rel. Carson v. Kozer, 105 Or. 486, 210 P. 179 (Sup. Ct. 1922); State ex rel. v. Olcott, 62 Or. 277, 125 P. 303 (Sup. Ct. 1912); Morford v. Pyle, 53 S.D. 356, 220 N.W. 907 (Sup. Ct. 1928).
Our view of the effect of fraud on petitions for recall accords with that of the courts of New York. See Matter of Lefkowitz v. Cohen, 262 App. Div. 452, 29 N.Y.S.2d 817 (App. Div. 1941) aff'd 286 N.Y. 499, 36 N.E.2d 680 (Ct. App. 1941), wherein the Appellate Division, in deciding an appeal from an order which declared void a petition designating John R. Davies as a mayoral candidate, rejected the theory that persons who obtain signatures to designating petitions are the agents of all the signers "so as to make those who are honest chargeable with knowledge that some of the signatures are forged or fraudulent. (Matter of Burke v. Terry, 203 N.Y. 293, 297, 96 N.E. 931)." The court ruled that it would be unjust to disenfranchise those citizens whose names happened to be on sheets which contained names that were irregular, and that to reject the entire petition because *431 it was "saturated with fraud" would unfairly deprive qualified signers of the right to designate a candidate "simply because others over whom they have no control may have perpetrated a wrong." 262 App. Div. at 454, 29 N.Y.S.2d at 820.
Here, as Judge Larner appropriately observed:
* * * in a recall petition, and particularly the recall petitions in this City, there is no individual, there is no party involved, there is no perpetrator of a fraud who is to be penalized by virtue of vitiating his entire application because of what he did. So that the entire rationale of the McCaskey case of preventing the perpetrator of the fraud from carrying it out by this wholesale voiding of the petition does not apply.
Furthermore, it is noteworthy that the matter was before the Law Division on a motion for injunctive relief. The trial court found, and we agree, that incumbents would not be prejudiced if the clerk continued to perform his duties.

III
Petitioners urge that the trial court erred in its conclusion that the computation standard for determining the required percentage of the registered voters of the city was the date of the most recent general election rather than the date of the filing of their petition. They point to the fact that with the exception of N.J.S.A. 40:69A-184[1], the Faulkner Act under which the city functions, and specifically N.J.S.A. 40:69A-169[2], is unlike analogous provisions appearing *432 in other sections of our election laws in that it fails to explicitly provide that the relevant percentage of registered voters shall be computed with reference to the next-preceding general election. The argument runs that in the absence of definitive statutory guidelines, the 25% requirement should be struck against the number of voters registered at the end of the month preceding the filing of a recall petition. Petitioners rely heavily upon Roman v. Sharper, 53 N.J. 338 (1969), and urge that qualified voters are those who are eligible to vote at a recall election. In that case the court held that for purposes of tabulating the 25% requirement, "qualified voters," in the case of a ward election, meant "voters registered from that ward and therefore `qualified' to vote at the election" (at 341-342). It is thus argued that the most recent general election date is not controlling.
The incumbents seek to refute that contention and take the position that "only two figures have been used as a reference base" in our election law: "(a) the number of voters who voted at the last general or municipal election or (b) the number of registered voters at a former election." They base this predication upon Johnson v. Reichenstein, 50 N.J. Super. 116, 121 (App. Div. 1958), wherein this court stated: "The pattern that emerges from the statutes is that the number of signers required is readily ascertainable by reference either to registration totals or votes cast in a prior election." Incumbents may have misread the import of that case. We did not mean there to indicate that these were the sole bases of reference, nor did we intend to imply that the prior election, which is most commonly used, must always serve as the reference base for ascertaining registration totals. Compare N.J.S.A. 40:69A-1, 3, 19, 25, 153, 169, 184 and 185; and N.J.S.A. 19:13-5. However, in light of the several provisions throughout our election laws referring to the most recent general election for a determination of voter registration, it is at least arguable that if the Legislature had intended the quantitative base to be in some manner related to the date of filing a recall petition, and *433 not the date of the last general election, it would have so provided in unmistakable language.
The absence of statutory guidance in N.J.S.A. 40:69A-169, regarding an appropriate standard for determining the reference base, necessitates a practical approach to the problem. In this respect we are guided by the actions of the Legislature in other related areas. Note, e.g., N.J.S.A. 40:71-1 and 5; N.J.S.A. 40:74-14; N.J.S.A. 40:75-3 and 27; N.J.S.A. 40:80-1. By way of comparison, see N.J.S.A. 19:13-5 of the General Election Act, which requires a petition nominating an officer for election to be signed by at least 2% of the entire vote cast for members of the General Assembly at the last-preceding general election.
During the Law Division hearing of this matter petitioners called the clerk of the local Bureau of Elections as a witness. He testified:
Q. Mr. Brady, if I were to ask you now how many registered voters there were in Jersey City on January 11, 1970, what effort would the Bureau of Elections have to make in order to ascertain that figure, sir?
A. They would take the report as of November the 3rd, 1970, subtract from it the removals and add the additions.
THE COURT: Are those figures readily available?
THE WITNESS: On a monthly basis only, your Honor, not on a daily basis.

* * * * * * * *
Q. So if I asked you, for example, as of January 1st what the figures were, you wouldn't have to do anything. You have those figures.
A. We would have to make a few additions or subtractions, simple arithmetic.
The evidence in this area of the case was most general and related to the municipality-at-large. There is an indication in the record, however, that the allegedly ascertainable monthly calculations referred to were not available with regard to the municipal wards.
More importantly, there is no statutory requirement to maintain a current voter registration list. We recognize that *434 such lists are indirectly up-dated by statutorily mandated monthly reports concerning death, N.J.S.A. 19:31-16, and disenfranchisement by conviction, N.J.S.A. 19:31-17, by registrations entered by municipal clerks, N.J.S.A. 19:31-7, by the discretionary acts of commissioners or county boards of registration, N.J.S.A. 19:31-15, by the corrective procedures required to be exercised by the commissioners or municipal clerks, N.J.S.A. 19:31-11.1, 12, 13.1, 14, 19, 23 and 26, and by the acts of the registrants themselves, N.J.S.A. 19:31-11 and 13. Nevertheless, these procedures are not so coordinated as to insure the ascertainment of the current voter registry with requisite certitude.
The trial judge, who was aware of these inherent problems, concluded:
* * * that for purposes of clarity, certainty and accord with the overall plan of the election laws, that the Legislature intended that the only practical intention that can be utilized is the number of registered voters as of the time of the last general election, otherwise we get involved with extensive and elaborate technicalities and methods of trying to find out as of a certain date the number of people that have been stricken from the rolls since the last general election, the number of people who have registered since the last general election. This is not a standard norm, that, I think, was intended by the Legislature. * * * If you are to utilize the date of the filing of the petition, this makes it too viable, too much subject to, as I say, disputes, litigation, arguments, et cetera.
In the circumstances of this case, particularly where a period of less than 60 days had intervened between the last general election and the end of the month preceding the filing of the petitions, during which period recall petitions were being circulated, we find neither a practical nor a legal basis upon which to disturb the determination of the Law Division.

IV
Petitioners claim that the identity of the affiants either as ward residents and/or as signers of the petitions they attested is irrelevant to the validity of those petitions. They maintain *435 that a departure from the provisions of N.J.S.A. 40:69A-170[3], to the extent that a petition affiant failed to sign the petition or was not a ward resident, or that he was neither a ward resident nor a signer, is a mere technical failure which should not invalidate an otherwise valid affidavit or petition. They insist that such an approach is consonant with our case law and further, that it is necessitated by the practical exigencies of a "multi-level recall" effort.
In support of their relaxed approach to the express directives of the Legislature they rely principally upon Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951). However, Sharrock is not supportive of their contention and, as incumbents appropriately observe, that was a post-election contest. Qualitatively, there seems to be some difference between an effort to set aside a concluded election and an attempt to preliminarily eliminate or cure deficiencies in an inchoate recall action. See In re Smock, 5 N.J. Super. 495, 501-502 (Law Div. 1949); 29 C.J.S. Elections § 51 at 68; cf. In re Clee, 119 N.J.L. 310 (Sup. Ct. 1938). Additionally, it is noteworthy that Sharrock involved a directory statutory provision with which there had been substantial compliance.
In this regard we are mindful that there is no constitutional right to recall officeholders and that if the right is granted, the Legislature can impose rational restraints upon its exercise. Roman, supra, 53 N.J. at 341; see In re Smock, supra, 5 N.J. Super. at 501; Leers v. Diehl, 11 N.J. Misc. 525, 527, 167 A. 216, 217 (Sup. Ct. 1933). Here, the Legislature did just that. Consequently, *436 there must be a substantial compliance with the statutory procedure adopted. Bab v. Hoyt, 79 N.J. Super. 531, 533 (Law Div. 1963).
The express provision that "[o]ne of the signers to each such paper," N.J.S.A. 40:69A-170, shall execute the statutory affidavit cannot readily, if at all, be ignored on the theory that it is directory and not mandatory in nature. In fact, with regard to the rationale of Roman, that the Legislature intended "to commit the subject of recall to the voters qualified to vote" in the ward recall effort, the affiant's residence in the ward appears to be the essence of the explicit statutory provision. See 53 N.J. at 341-342. See also, State of New Jersey, Report of the Commission on Municipal Government, 16-17 (1949). Therefore, the statute should not be considered merely directory. Paramus v. Block 1527, Lots 1-2, Ridgewood Park Estates, 42 N.J. Super. 369, 375 (App. Div. 1956); Sharrock, supra, 15 N.J. Super. at 17; see Swiney v. Dept. of Treasury, Div. of Pensions, 84 N.J. Super. 186, 192 (App. Div. 1964).
Apart from these considerations, it is of more than little interest that in at least one instance our former Supreme Court rejected certain petitions in an initiative on the ground that the statutory affidavit was executed by "one who did not sign the paper [petition] itself." Buohl v. Beverly, 89 N.J.L. 378, 379 (Sup. Ct. 1916). In Buohl the statute (L. 1911, c. 221, at 478) provided that the "signatures, verification, authentication, inspection, certification, amendment and submission" of petitions for initiative "shall be the same as provided for petitions under the last [recall] section." Significantly, except for the substitution of the word "take" for the word "make" (an oath), that section contains language identical to the critical provision presently involved. Compare N.J.S.A. 40:69A-170, reproduced in part in n. 3, supra, and L. 1911, c. 221, § 15, at 476.
Of like effect as Buohl is Fiannaca v. Gill, 78 Nev. 337, 372 P.2d 683 (Sup. Ct. 1962), citing Buohl with approval, *437 and In re Opinion of the Justices, 114 Me. 557, 95 A. 869 (Sup. Jud. Ct. 1915), wherein the precise questions now raised were considered. To wit:
(A) In certain cases it appears that the verifying petitioner did not sign the petition as a petitioner, which he verifies, but did sign some other petition. In such case shall the names on the petition verified by him be counted?
Answer: We answer in the negative.
(B) Would it affect the counting of names on petitions just described if the verifying petitioner, although failing to sign the petition as a petitioner, which he verified, sign a similar petition as a petitioner in the same town or city; such latter petition being properly certified by the town clerk?
Answer: We think the verification of a petition must be by a petitioner whose name is upon the petition verified. [114 Me. at 570, 95 A. at 875]
In the same vein, see 42 Am. Jur.2d, Initiative and Referendum, § 30 at 678.
Although it may seem that the conclusion suggested by the foregoing discussion conflicts with the philosophy previously adopted in relation to the effect of the alleged fraud upon the validity of the entire C.I.L. petition, it is to be remembered that the underlying distinction is not one of philosophy but, rather, of compliance with the clear and explicit terms of the statute in question. See Sharrock, supra, 15 N.J. Super at 18. In the circumstances, the statute must be enforced without qualification. Rafferty v. Schatzman, 81 N.J. Super. 58, 62-63 (Law Div.), aff'd o.b. 81 N.J. Super. 64 (App. Div 1963). This is not to say, however, that a petition sheet must always fall where the affidavit appended to it is technically irregular or defective. See Wyckoff, supra, 102 N.J. Super. at 31-32; accord, Pafford v. Hall; State, ex rel. v. Graves; cf. State ex rel. Carson v. Kozer; Barkley v. Pool, all supra. Also, see 28 Am. Jur., Initiative, Referendum And Recall, § 62 at 477-478.
In the instant case, it would seem to have been perfectly permissible to have amended the affidavits by substituting qualified affiants, who could have attested to the *438 genuineness of the signatures, within the ten-day amendment period of N.J.S.A. 40:69A-170. If such affiants were unavailable, one or more of the signers could have rechecked the signatures by recirculating them among the signers of the petition. Such a course of action not only seems plausible but, also, is clearly within the intendment of the statute. In fact, it is plain that the legislative provision for an opportunity to amend defective petitions was intended to comprehend any curable defects. That petitioners failed to avail themselves of that opportunity now debars them from complaint. Cf. Sharrock, supra, 15 N.J. Super. at 19; 26 Am. Jur.2d, Elections, § 224 at 55. To hold otherwise would do violence to the explicit language of the statute and contravene the clear intent of our Legislature.
For the foregoing reasons, the several orders under review are affirmed.
NOTES
[1] Part of this statute provides, in substance, that in first class municipalities having a population exceeding 800,000 an initiated ordinance may be submitted upon a petition signed by voters equal to 15% of the valid votes cast at the last-preceding election for the General Assembly.
[2] This statute provides that a recall petition shall demand the removal of a designated incumbent, be signed by qualified voters equal in number to at least 25% of the registered voters of the municipality, and be filed with the municipal clerk. It shall set forth a statement of the cause upon which the removal is sought.
[3] This statute provides in pertinent part, that the signatures to a recall petition need not all be appended to one paper but each signer shall add to his signature his place of residence giving the street and number or other sufficient designation if there shall be no street and number. One of the signers to each such paper shall take an oath before an officer competent to administer oaths that the statement therein made is true, as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be.