CHRIS G. PAPPAS, PLAINTIFF-APPELLANT, v. ARTHUR C. MALONE, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued October 23, 1961—Decided October 24, 1961.

Mr. Robert J. Carluccio argued the cause for the appellant (Messrs. Carluccio & Carluccio, attorneys).

Mr. O. J. Pellet argued the cause for the respondents (Mr. Robert F. McAlevy, Jr., attorney; Mr. E. Norman Wilson, of counsel).

PER CURIAM. A petition was filed with the clerk of the City of Hoboken seeking a referendum election upon the question whether the form of government of that municipality should revert to its prior form, i. e., the commission form of government. This petition was filed pursuant to N. J. S. A. 40:69A–25. The city clerk rejected the petition, listing a number of grounds. An action was brought in the Law Division to set aside the action of the city clerk and to compel the submission of the question at the forthcoming general election in November. The trial court sustained the action of the city clerk and we certified the ensuing appeal.

The city clerk contends a petition filed under N. J. S. A. 40:69A–25 must comply with the provisions of N. J. S. A. 40:69A–186 and says the petition here fails to comply with that section in that (1) it does not designate the "Committee of the Petitioners" and (2) does not satisfy the provisions of that section with respect to the affidavit of the circulators.

*N. J. S. A.* 40:69A–186 does not by its own terms apply to a petition filed under *N. J. S. A.* 40:69A–25. *Section* 186 is one of a number of sections dealing with the adoption of *ordinances* by initiative and referendum. These provisions do not by virtue of their own terms reach the referendum proposal contemplated by *section* 25 and hence if *section* 186 does apply it must be by virtue of some other provision of the statute incorporating its terms expressly or by implication. It may be noted that in *section* 1(b) which relates to a petition for a charter study, there is an express reference to *sections* 186 to 188, and also that in *section* 19, which relates to petitions with respect to the adoption of an optional plan of government, there is a reference to *section* 1(b) and thus a reference to *sections* 186 to 188. *Section* 25 contains no such cross-reference. The question arises whether the Legislature deliberately refrained from incorporating any of the provisions of *sections* 186 to 188 or whether it was an oversight which the court should repair under its obligation to give effect to the legislative purpose. Some members of the court are of the view that there was no oversight and that the Legislature intended *section* 25 to operate without reference to *sections* 186 to 188. Other members of the court believe it is unnecessary at this time to decide this question for the reason that even if those other sections do apply to a petition under *section* 25, nonetheless as matters now stand it cannot be said that the petition here filed failed to comply with the terms of such other sections.

If we read into *section* 25 the same reference which appears in *section* 1(b), we find that the Legislature did not incorporate all of the provisions of *sections* 186 to 188 but rather only such portions of those sections as constitute "requirements of form." This is evident from the express provision of *section* 1(b) which reads "A petition under this section shall conform to the *requirements of form* for petitions under" *sections* 186 to 188. (Emphasis added)

Referring then to *section* 186 the question arises whether the requirement therein for the designation of a committee of petitioners is a matter of form or a matter of substance. We think it is a matter of substance rather than of form and that in its nature it is not applicable to a petition under *sections* 1(b), 19 or 25. *Section* 186 provides for the designation of a committee of petitioners "who shall be regarded as responsible for the circulation and filing of the petition and for its possible withdrawal as hereinafter provided." As appears from the sections which follow, the Legislature contemplated the committee might withdraw petitions relating to the adoption of *ordinances.* The apparent reason is that following the filing of a petition the governing body might take such action as would make it desirable to withdraw the petition. No such consideration applies with respect to petitions for charter study or for adoption of or reversion to a form of government. In such situations, there is no reason why any committee should have the power to decide not to proceed in the face of the action taken by the signatories to the petition. Hence we are satisfied that the designation of a committee of petitioners is not a matter of form as to which a petition under *sections* 1(b), 19 or 25 must conform. We accordingly disagree with the views expressed in *Lindquist v. Lee,* 34 *N. J. Super.* 576 (*Law Div.* 1955).

■■ The circulator's affidavit required by *section* 186 is a matter of form and must be furnished with a petition filed under *section* 1(b) and for present purposes we accordingly assume it would be equally applicable with respect to the petition here involved. The objection to the circulator's affidavits is that they do not appear on each *sheet* of the total petition although it appears not to be disputed that the affidavits purport to relate to a number of such sheets attached to each affidavit itself. The trial court rejected this criticism on the thesis that there was substantial compliance and that in any event the deficiency would be amendable. We cannot be certain that the Legislature in its reference in

*section* 186 to "each separate petition paper" meant each separate sheet rather than each of the several petitions containing more than one page which would ultimately be assembled and filed as a single instrument pursuant to *section* 187. We note for example that in *section* 153 the Legislature refers to "a separate sheet of paper" to express a more confining requirement. At any rate we are satisfied that there was substantial compliance, subject of course to the right of the clerk to question each affiant as to whether in fact he witnessed the execution of all of the signatures on all of the sheets of paper attached to his affidavit. The question reserved above, whether *section* 25 does incorporate the formal requirements of *section* 186, could not arise for necessary decision unless it should appear that the circulator's affidavit in fact did not apply to some of the sheets annexed to such affidavit.

The remaining question is whether the petition contained the signatures of the required number of registered voters. *Section* 187 provides that if the clerk determines the petition is insufficient "he shall set forth in his certificate the particulars in which it is defective." On the assumption upon which the clerk here operated, to wit, that *sections* 186 to 188 are applicable, it is patent that the clerk's certification was wholly deficient because it did not set forth the particulars in which the petition is allegedly defective. The language of *section* 187 is clear in this regard, but even in the absence of an express requirement to that effect the duty of the clerk to be specific would be implicit and inescapable. Yet in view of the overall uncertainties in the statute and the substantial public interest involved we are not disposed to invalidate the clerk's rejection for his failure to meet the requirement of specificity. Hence we will direct that a trial on the question of the sufficiency of the signatures shall start forthwith and proceed without interruption to a conclusion.

The parties should cooperate to adduce the facts before the trial court, and the trial court should so conduct the

hearing as to obviate disputes as to which side has the burden of going forward.

■ *Section* 25 provides that the question shall be submitted to the electorate as provided in *section* 20. *Section* 20 provides that the question shall be submitted at the next general or regular municipal election if one is to be held not less than 60 nor more than 120 days after the filing of the petition, and if a general or regular municipal election is not to be held within that time, at a special election within such period. The petition was filed within time to have the question submitted at the general election to be held on Tuesday, November 7. We do not know whether the triable issue of fact can be disposed of in time to permit the appearance of the question on the sample ballot and on the voting machine on November 7 if the petition is sustained. Every effort should be made to that end, but if that result cannot be achieved, the trial court in its discretion shall fix a date for a special election notwithstanding that such date may be beyond the 120-day period provided for in the statute.

The judgment is reversed and the matter remanded to the trial court for further proceeding not inconsistent herewith.

. HALL, J. (dissenting). All members of the court agree that the provisions of the Faulkner Act (*L.* 1950, *c.* 210, as amended; *N. J. S. A.* 40:69A–1 *et seq.*) relating to the very important matter of procedural conditions precedent for referendum elections on basic questions, sought by petition of the electorate, are confusing and ambiguous and greatly in need of legislative clarification. Until that happens, a court's job is to reach an interpretative conclusion which it believes conforms to what the Legislature intended and would have said had it spoken fully and clearly.

One should start, in a case like the one before us, with the common sense assumption that the Legislature intended to treat comparable situations in the same way procedurally, even though the varied language used be somewhat deficient or obscure, unless there appears some unmistakably clear

verbiage or discernible reason absolutely compelling the conclusion that different treatment was contemplated.

This act deals with only three situations in which the citizenry may start the machinery in motion by petition for consideration of a change in the form of local government. The first relates to an election on the question of whether a commission should be created to study a present charter and make recommendations as to change. (*N. J. S. A.* 40:69A–1) ; the second, to a referendum on the direct adoption of one of the governmental forms authorized by the act without the preliminary step of a charter commission (*N. J. S. A.* 40:69A–18, 19 and 20) ; and the third, here involved, to a referendum on reversion to the prior form of government after adoption and use of one of the Faulkner plans for a period of years (*N. J. S. A.* 40:69A–25). Certainly all three situations relate to the same basic type of thing, *i. e.,* the matter of adoption of a new form of government. All are of the same degree of public importance. No one has been able to suggest any sound reason why the Legislature would desire that the make-up of the petition and the method for processing it should, as matter of theory or practicality, be any different in the three cases, or why it would want to specify such matters in detail for one situation and make no provision at all in another. Therefore, there is every reason to infer in the present instance that the Legislature would fundamentally intend a common procedural pattern.

None of the sections mentioned contains any detailed provision of its own as to the nature or composition of the petition, how, when or by whom its sufficiency shall be determined and certified, or whether and how it may be amended if insufficient. In *section* 25 the only procedural provision is a limited reference to *sections* 19 and 20. *Section* 19 likewise contains no specifications of requirements, but simply refers on this score to subdivision (b) of *section* 1. The latter in turn expressly rests as to procedural requirements on *sections* 186 to 188, which contain the only provisions

in the act about the mechanics of voter petitions and their processing, apart from those relating to the non-comparable situations of nomination of candidates for office and the recall of elected officials.

*Sections* 186, 187 and 188 are not merely of a general procedural nature, but create and define, both substantively and procedurally, the right of initiative and referendum on local legislation by petition. They go into great detail about the technical composition of petitions, examination and certification as to sufficiency by the municipal clerk, and method of amendment of defects. Included in *section* 186 with other provisions about the make-up of the petition are requirements that every petition contain a verification of the signatures on "each separate petition paper" by attached affidavit of the circulator thereof and a designation on each paper, by name and address, of five voters called "the Committee of the Petitioners." This committee is expressly charged as "responsible for the circulation and filing of the petition and for its possible withdrawal as hereinafter provided." And in the event the clerk rejects the petition or any amendment thereof, he must give notice of the rejection to at least two members of the Committee. There is nothing on the face of any of the detailed provisions, except in one particular to be mentioned, which would not be equally salutary and appropriate with respect to petitions under *sections* 1, 19 and 25.

And so it seems to me there can be no doubt that the cross-reference language of *section* 1(b), and therefore also that of *section* 19, despite some inept verbiage, mean and are intended to have the effect of inserting in those sections, as the procedural provisions thereof, the appropriate language of *sections* 186 to 188, but with the necessary changes to adapt the same to an election about a charter commission or one relating to the adoption of a new form of government, as the case may be, instead of a referendum to propose, approve or reject an ordinance.

The only provision of the incorporated sections which is not appropriate to any petition under *sections* 1, 19 or 25, is, as the majority points out, the language in *section* 186 referring to the responsibility of the Committee of the Petitioners for the withdrawal of the petition "as hereinafter provided" (in *section* 191). But the cross-reference language of *section* 1(b) recognizes this inappropriateness and excludes its incorporation thereof by its very language. After stating that a petition shall conform to the requirements of form in *sections* 186 to 188, it says: "and shall be subject to examination, certification and amendment as therein provided." The absence of "withdrawal" is pointed and meaningful.

The majority reaches its conclusion that "the Committee of the Petitioners" is not required in a *section* 1(b) petition (and so not in one under *section* 19) on the basis that it is not a "requirement of form" and 1(b) only specifies conformity with requirements of that category. In the first place, I must note that the 1(b) reference to the "requirements of form" in *sections* 186 to 188 is to my mind a reference generally descriptive of the content of those referred to sections rather than, as the majority is compelled to suggest, an indication that the Legislature intended to enact in those sections matters of substance and matters of form to be considered independent of each other. Other than the recital of the powers of the committee, everything in the three sections is matter of form.

The majority reasons that the committee requirement is one of substance because it has power, by reason of the language of *section* 186, to withdraw a petition. But, as I have just said, the provision for this power is not carried over into *section* 1(b). And there is no other basis for saying that the requirement for the appearance of the names and addresses of the committee on each petition paper is not merely a matter of form. It is part of what must be on the paper the same as the heading and the signatures. Its designation as the proper recipient of notice of rejection

is unmistakably procedural. Certainly it is at least as formal as the verifying affidavit of the circulator which the majority concedes to be a matter of form and not substance. The sponsors of this petition agree for otherwise they would not have attached circulators' affidavits. Therefore the names and addresses of the committee must be set forth on each "paper" of a petition filed under *sections* 1(b) and 19 and must, for the reasons set forth in *Lindquist v. Lee,* 34 *N. J. Super.* 576 *(Law Div.* 1955), be placed thereon before any signatures are appended.

The remaining question is whether a *section* 25 petition must meet the same requisites as one under *sections* 1(b) or 19. While it is true that the incorporation language in *section* 25 is not explicit to that effect as it is in the other two sections, there is a reference to *section* 19 to ascertain the minimum number of voters' signatures required and to *section* 20 to determine the manner of submission of the question to the electorate. If *section* 25, containing no other procedural provisions, is read without the 1(b) requirements, there would result a mere right to petition for a referendum on a most important question comparable to those submittable under 1(b) and 19 without any mechanics to make it effective. Absent would be any specifications as to whether the signatures need all be appended to one paper; whether the place of residence of each signer must be set forth; whether the signatures must be verified at all and, if so, how and by whom; where the petition should be filed; who is to pass upon its sufficiency, and within what time; how such determination is to be evidenced and given notoriety; and whether, how and when defects can be corrected by amendment. This, of course, is the result that obtains on the view of those members of the majority who hold that *section* 25 is to operate without any reference to *section* 1(b) and so without reference to *sections* 186 to 188 also. It is absolutely inconceivable to me that the Legislature could possibly have intended any such odd result in this one instance. There is no compelling reason not to say that

there was a legislative oversight in failing to include an explicit incorporation provision in *section* 25 and that this court must supply it to make the section practically workable and give effect to the legislative purpose.

I would therefore conclude that the petition here is fatally defective for want of the appearance of the names and addresses of "the Committee of the Petitioners" on each petition paper, that the defect is not amendable, that the municipal clerk properly rejected the petition on this ground and that the judgment of the Law Division should accordingly be affirmed.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—Justice HALL—1.