JAMES S. RAFFERTY, PLAINTIFF, v. FRANK D. SCHATZ-
MAN, COUNTY CLERK OF MIDDLESEX COUNTY;
PETER BIRO, CHAIRMAN OF BOARD OF ELECTIONS
OF MIDDLESEX COUNTY; AND FRANK D. SCHATZ-
MAN, INDIVIDUALLY AND MIDDLESEX DEMOCRATIC
COUNTY COMMITTEE, DEFENDANTS.

Superior Court of New Jersey
Law Division—Middlesex County

Decided October 11, 1963.

*Mr. Norman J. Abrams* for plaintiff (*Messrs. Abrams, Kestenbaum & Hendricks,* attorneys).

*Mr. Warren W. Wilentz* for defendant Schatzman (*Messrs. Wilentz, Goldman & Spitzer,* attorneys).

*Mr. John A. Lynch* for defendants Biro and Middlesex Democratic County Committee (*Messrs. Lynch & Gavarny,* attorneys).

HALPERN, A. J. S. C. These are cross-motions for summary judgment. Plaintiff James S. Rafferty seeks judgment

removing defendant Frank D. Schatzman as candidate of the Democratic Party for the office of Middlesex County Clerk, at the next general election, and to have his name placed on the official ballot as the Democratic Party candidate.

Defendant Schatzman's motion seeks to dismiss Rafferty's complaint and, in effect, to have himself declared as the Democratic candidate for County Clerk.

A brief recital of the facts which are not in dispute will set the stage for the decision which is to follow. Joseph M. Duffy, now deceased, had been elected in November 1959 as Middlesex County Clerk for a term expiring after the general election in November 1964. Under *N. J. S. A.* 19:23–14, March 7, 1963 was the last day for candidates to file for the primaries for the general election to be held on November 5, 1963. Duffy died on March 9, 1963. Pursuant to *N. J. S. A.* 40:38–8.1, the Governor appointed defendant Schatzman to fill the vacancy in the office of County Clerk. On April 16, 1963 the primary election was held throughout the State of New Jersey. The sample ballots printed and distributed in accordance with law, for the election in Middlesex County, indicated that the offices to be voted upon in the November general election would be for member of the State Senate, four members of the General Assembly, two members of the Board of Chosen Freeholders, and for individual municipal offices. No provision was made in the ballot for the office of Middlesex County Clerk. Plaintiff Rafferty, who resides in Middlesex Borough, contends that he received one write-in vote for the office of Middlesex County Clerk, and thereafter filed an acceptance for that position. Premised upon this one vote, he contends he is entitled to be the Democratic candidate for the office of County Clerk because a vacancy existed at that time.

It is obvious that on March 7, 1963, the last date for filing nominations for the primary, there was no vacancy for the office of Middlesex County Clerk because the incumbent, Duffy, did not die until March 9, 1963. In addition, under the provisions of *N. J. S. A.* 40:38–25, Duffy had previously

appointed defendant Schatzman to serve as a Deputy County Clerk. Under *R. S.* 40:38–26, upon Duffy's death, Schatzman automatically became the Acting County Clerk to fill the vacancy. The argument made by plaintiff that a vacancy existed which authorized him, or anyone else, to have his name written in for the April 1963 primary is completely specious and without foundation in law.

In fact, the procedure provided by the Legislature to take care of this kind of contingency is so clearly set forth in *N. J. S. A.* 19:27–11, quoted below, that there appears to be no reasonable doubt that the procedure followed by the respective county committees of the Democratic and Republican Parties, was the correct one. Since Duffy's death occurred more than 37 days prior to November 5, 1963, Schatzman's appointment by the Governor was only good until a successor was elected on November 5, 1963. *N. J. S. A.* 19:27–11 specifically provides for the naming of candidates for the election to be held on November 5, 1963.

I am of the opinion that *N. J. S. A.* 19:27–11 is the exclusive method provided by the election laws for the selection of candidates to fill a vacancy which occurs after the time limit for filing petitions for primary nominations. The statute, in significant part, reads:

"In the event of any vacancy, howsoever occurring, in the representation of any * * * county or municipal office, which vacancy shall occur after the last day for filing petitions for nominations for the primary election and prior to thirty-seven days preceding the general election, the members of the county committee of each political party representing the territory affected by such vacancy are hereby authorized to select a candidate for the office in question and within thirty-four days prior to the general election to file a statement of such selection duly certified to with the county clerk, and the person so selected shall be the candidate of the party at the ensuing general election.

Beside the selection of candidates by the respective committees of each political party as before provided, candidates may also be nominated by petition in a similar manner as herein provided for direct nomination by petition for the general election; but the petition shall be filed with the county clerk at least thirty-four days prior to such general election."

In other words, the Legislature in its wisdom provided the necessary machinery for filling a vacancy if it occurred in a situation such as we have in this case. It even gave anyone who wanted to run for this office the right to do so, provided he filed the necessary petition as if it had been a direct nomination under the statute.

Pursuant to the above statute, the Middlesex County Democratic Committee, on April 23, 1963, chose Schatzman as its candidate, and on April 30, 1963 formally certified his name as its candidate for the office of Middlesex County Clerk. On August 29, 1963 the Republican County Committee chose Edward Kitchen as its candidate for Middlesex County Clerk, and on September 27, 1963 formally certified his name as its candidate for the office.

I have searched the election laws and find no authority to support the position taken by the plaintiff in this case. I find the provisions of *N. J. S. A.* 19:23-13 and 16, cited by plaintiff as authority for his position, to be completely inapplicable to the facts in this case.

This country was founded and still exists as a democracy. We, in America, have found such a form of government to be desirable and strong, because it is established by the people and exists only for the common good of the people. The people have consented to be governed by their elected representatives. This form of government places great responsibility on the shoulders of the elected officials, and it cannot succeed unless the people have the opportunity of intelligently choosing their candidates. Theoretically, the candidates will work for the objectives which express the will of the people.

██ To carry out such theories and principles, the Legislature of New Jersey has enacted laws which provide the machinery for selecting candidates, holding primary and general elections, and filling vacancies when they occur. The process of revising and amending the election laws is never-ending. Whenever a court is called upon to decide an election law issue, its function is rather narrow. If the statute in question is clear, the will and intent of the Legislature must

be enforced. If the statute is ambiguous or conflicts with some other law, then the court must consider the election laws as being *in pari materia*—an integrated whole—and arrive at the intent of the Legislature with the view in mind of effectively carrying out the democratic ideals and principles previously mentioned.

Were I to accept plaintiff's arguments I would be doing violence to these principles, and would be depriving the voters in Middlesex County — who happen to be the Democratic voters in this case — from choosing their candidate for the office of County Clerk. I would be foisting the plaintiff upon them as an unwanted candidate.

To accept plaintiff's argument would make it possible for any person, regardless of his political philosophy, to become a candidate despite the wishes of the people whose interests he purports to represent. No such absurd result was ever anticipated by the Legislature.

On the other hand, the machinery provided by *N. J. S. A.* 19:27–11 is designed to give the people an intelligent opportunity to select and ultimately elect a representative of their choice.

Counsel for the defendant Schatzman will present an appropriate judgment granting his client's motion and denying the plaintiff's.