IRIS SELIGSON, MARGE BORNSTEIN, GEORGE PELLACK, NICH-
OLAS FELICE, RICHARD VANDER PLAAT, DESIGNATED AS
COMMITTEE OF PETITIONERS, PLAINTIFFS, v. DONALD DE
BRUIN, BOROUGH CLERK; BOROUGH OF FAIR LAWN;
MAYOR AND COUNCIL, BOROUGH OF FAIR LAWN, DE-
FENDANTS.

Superior Court of New Jersey
Law Division—Bergen County

Decided April 1, 1980.

*Dennis P. La Hiff* for plaintiffs (*La Hiff & Peck*, attorneys).

*Jack Ballen* for defendants.

*Dennis O'Leary,* Assistant County Counsel, appeared *amicus curiae* on behalf of Carl Hartmann, Bergen County Clerk (*Dominick Presto,* County Counsel, attorney).

PETRELLA, J. S. C.

This application in an election matter[1] was brought before the court on April 1, 1980 by plaintiffs for an order seeking relief from the fixing by defendant Fair Lawn borough clerk of the June 3, 1980 primary election date as the date for a referendum to allow the registered voters in Fair Lawn to vote on a proposed change of government in Fair Lawn. Based on the nature of the relief sought, this court considered plaintiffs' application for relief in aid of the judgment heretofore entered by the court on January 18, 1980. That judgment was affirmed March 17, 1980 by the Appellate Division of the Superior Court. Both decisions are unreported.

---

[1] Election cases are entitled to a preference under *R.* 1:2 5(1).

A brief background discussion will provide a frame of reference for these proceedings. By at least October 1979 petitions were circulated in Fair Lawn seeking to place on the ballot the question of reversion to the prior form of government in the Borough of Fair Lawn pursuant to *N.J.S.A.* 40:69A–25. Two sets of petitions were filed on November 2, 1979 with the borough clerk, one set by plaintiffs and another by a group referred to as the League of Women Voters. Plaintiffs designated themselves a "committee," but the court held that was neither necessary nor required in this type of petition, relying on *Pappas v. Malone*, 36 *N.J.* 1 (1961).

The borough presently operates under a form of municipal government referred to as the "Faulkner Act—Plan E." *N.J. S.A.* 40:69A–114.1 *et seq.* On November 2, 1979 petitions were presented to defendant borough clerk for filing, purportedly signed by 4,255 registered voters.[2] Thereafter, the borough clerk failed to act within the 20-day period required by *N.J.S.A.* 40:69A–187, which period expired November 23, 1979, not counting Thanksgiving, which fell on the twentieth day. *N.J.S.A.* 19:11–1. On November 27, 1979 the borough attorney, with telephone notice to one plaintiff on November 26, sought an *ex parte* order on behalf of the borough clerk by applying to this court for an extension of time until December 7, 1979 to certify the sufficiency or insufficiency of the petitions. Noting that the application was *ex parte* and made *after* the 20-day period had already expired, the court concluded it was without authority

---

[2] There were, in effect, two groups or sets of petitions filed on November 2 bearing a total of 4,255 signatures. Petitioners' consolidation request was denied by the borough clerk. Subsequently, two second groups or sets of petitions were filed December 17, 1979. The court ruled that the requested consolidation should have been permitted. *Cf. In re Petition of Smith*, 114 *N.J.Super.* 421, 428–429 (App.Div.1970), certif. den. 59 *N.J.* 263 (1971); *N.J. S.A.* 40:69A–188.

under *D'Ascensio v. Benjamin,* 137 *N.J.Super.* 155, 160 (Ch.Div. 1975), aff'd 142 *N.J.Super.* 52 (App.Div.1976), certif. den., 71 *N.J.* 526 (1976), to extend the statutory 20-day signature verification period, and the application on behalf of the borough clerk was denied. The borough attorney thereupon elected to withdraw filing of his proffered complaint.

On December 6, 1979 plaintiffs obtained an order requiring defendants to show cause why they should not be compelled to provide for submission of the referendum question to the voters of Fair Lawn pursuant to *N.J.S.A.* 40:69A–20.[3] On the same day, December 6, the borough clerk addressed a letter to the mayor and council, declaring the petitions, in general terms

---

[3]The order to show cause also sought a ruling that Ordinance 1190 79 of Fair Lawn was void under *N.J.S.A.* 40:69A 17. The ordinance was admittedly adopted at a special meeting after the November 2, 1979 filing of petitions. It purported to replace the referendum with a charter commission under *N.J.S.A.* 40:69A–1 *et seq.* Defendants had argued that petitions later deemed "insufficient" by the borough clerk were or should not be considered "filed" within the meaning of *N.J.S.A.* 40:69A–17, taking the incongruous position that there could only be a filing upon submission of a legally sufficient petition. The court found that even apart from whether the petition was "filed," proceedings were pending at the time of the alleged passage of the ordinance. Furthermore, the contention that there was no "filing" of a petition until deemed sufficient would lead to absurd results. Under defendants' reasoning the 20-day period under *N.J.S.A.* 40:69A 187 would not have begun to run prior to determination by the borough clerk, and he could take his time if he knew he was rejecting. Furthermore, petitioners had been prevented from correcting the alleged deficiencies to even start the time running, if that frivolous theory were correct. The court, therefore, ruled that a petition submitted to the clerk bearing a sufficient number of signatures on its face was "filed" regardless of subsequent action by the clerk in declaring it sufficient or insufficient. See definitions of "file" or "filed" in *N.J.S.A.* 19:1 1 as "Deposited in the regularly maintained office of the public official wherever said regularly maintained office is designated by statute, ordinance or resolution." See, also, *N.J.S.A.* 40:69A–187 through 190; *R.* 1:5 6(c). The ordinance was void by virtue of *N.J.S.A.* 40:69A 17.

(contrary to the specific reasons required by the statute), insufficient.[4]

This series of events, could well have, on plaintiffs' December 6 application, resulted in the petitions theretofore filed having been deemed timely on November 23, 1979 under the statute for failure of the clerk to act before expiration of the 20 days. Nevertheless, the court declined to so order, and held a plenary hearing as to the sufficiency of the petitions and the borough clerk's actions, *Stone v. Wyckoff*, 102 *N.J.Super.* 26, 34 (App.Div. 1968), certif. den. 52 *N.J.* 254 (1968), in order to provide a factual record in the absence of any clear statutory mandate or appellate decisional authority indicating that the preferable or required course was to immediately order the question placed on the ballot.

On December 11, 1979 petitioners sought to remedy some of the alleged deficiencies (see *N.J.S.A.* 40:69A–188). And, on December 17, 1979, additional and supplemental signatures were submitted. It was stipulated that the borough clerk had refused to allow access on December 11 (or any other date) to the previously filed petitions for corrections or additions in an attempt to remedy certain deficiencies, including some relating

---

[4]The borough clerk had certified in this first determination that under *N.J.S.A.* 40:69A–19, 4,086 signatures were necessary, based on the number of registered voters in Fair Lawn in the November 1979 election. The borough attorney subsequently gave his opinion that a figure of 4,183 should be used, based on the number of voters in the preceding general election in November 1978. Thereafter, and following this advice, the borough clerk changed the required number in his letter of December 24, 1979 as to supplemental petitions submitted on December 17, 1979. Under the facts of this case, and based on the passing of approximately 360 days since the last general election and "for purposes of clarity, certainty and accord with the overall plan of the election laws," the November 1979 figure was found by this court to be appropriate and the original determination by the clerk was deemed a proper exercise of his discretion. See *In re Petition of Smith, supra*, 114 *N.J.Super.* at 434. The court found sufficient valid signatures submitted to satisfy either requirement.

to incomplete or improper notarization.   Compare *N.J.S.A.* 40:69A–188 and *N.J.S.A.* 19:23–20.

On January 2, 1980, the adjourned date of the order to show cause, the court began hearing testimony over the course of six days as to the alleged insufficiency of the petitions.   On January 18, 1980 the court ruled that the petitions submitted contained a sufficient number of valid signatures and complied with *N.J. S.A.* 40:69A–19.[5]   In accordance with its oral opinion of that date the court ordered that a referendum election be held on a date to be set by the borough clerk within the time frame provided by statute.   Thereafter, and without setting a date for an election, defendants appealed to the Appellate Division, which heard the case on an accelerated basis.   On March 17, 1980 the Appellate Division affirmed this court's rulings and

---

[5]Reasons given by the clerk, on advice of counsel, for rejecting some of the signatures were: (1) nicknames and incomplete names; (2) printed names; (3) use of husband's name or initial; (4) no address given; (5) not legible; (6) use of Mr. & Mrs.; (7) duplicate signatures; (8) signatures deemed not comparable by the clerk; (9) various technical deficiencies by the notary and/or deponent.   Indeed, some rejections were made by hired temporary help who were neither employees of the clerk's office nor the municipality. This court observed the signatures challenged and the clerk's or assistant clerk's comparison from the actual voter registration books at the hearing. Liberal statutory construction has been afforded this particular type statute. See *Retz v. Saddle Brook Tp.*, 69 *N.J.* 563, 573 (1976); *Stone v. Wyckoff, supra* (102 *N.J.Super.* at 34) (challenged signatures on petitions are deemed prima facie that of registered voters at trial); *In re Petition of Smith, supra; Pritel v. Burris*, 94 *N.J.Super.* 485, 492 (App.Div.1967).   Most disqualifications of signatures were reversed after either concession of inappropriate disallowance or as an abuse of discretion, *Stone, supra* (102 *N.J.Super.* at 34), except where a signature was clearly not comparable, where only one person signed, or where there was no address or no such registered voter.   The court found a sufficient number of signatures to warrant submission of the question to the voters (4,290 signatures).   The rejection by the assistant clerk of certain signatures without the clerk's review, as well as the inference that some signatures may have been rejected by temporary, hired *per diem* help, raises an undecided issue of improper delegation of authority.

rejected as totally without any merit two new grounds never presented to the trial court and raised or attempted to be raised by defendants for the first time on appeal.

On March 31, 1980 the borough clerk by letter fixed June 3, 1980, Primary Day, as the date for submission of the question of change of government to the voters. The court received telephone notice the same day of plaintiffs' intent to make application to challenge that date. On April 1, 1980 the parties once again appeared before this court. Plaintiffs requested that the court declare invalid the date fixed and order the scheduling of a special election. Although, at first blush, a date coinciding with the primary elections appeared convenient, and might also result in some undisclosed dollar saving to the taxpayers in avoiding a separate special election date, it became apparent that there were legal and practical impediments to the use of that date for such a referendum. Representations of defense counsel and documents in evidence reflect that the June 3, 1980 date was picked by the clerk after consultation with the borough attorney. The latter had previously given his March 28 written opinion, without finding legal authority one way or the other, that there was no statutory impediment to holding the referendum election on the primary election date. Furthermore, a short March 25, 1980 memorandum (in evidence) from the Bergen County Counsel's office to the Deputy County Clerk had been received March 26, 1980 in the borough clerk's office and distributed to Fair Lawn municipal officials and the borough's law department. County Counsel's position was that although no specific restriction had been found as to the use of the primary date, it could create confusion and raise public policy consideration.[6]

---

[6]The March 25 memorandum said:

The question posed is may a special election called to consider a change in the form of municipal government be held on the same day as the primary election.

The issue is whether the borough clerk acted in accordance with applicable statutes and within the limits of his discretion in picking the primary date for submission to all voters of the referendum question, and, if not, whether the court should set a date before the primary if no appropriate agreement could be reached. The applicable statute, *N.J.S.A.* 40:69A-20 (entitled "Submission of Question"), reads:

> The municipal clerk shall provide for the submission of the question at the next general or regular municipal election if one is to be held not less than sixty days nor more than one hundred twenty days after the filing of the petition, and if a general or regular municipal election is not to be held within that time, at a special election within such time. The question of adoption of an optional plan of government shall be submitted to the voters of the municipality in the same manner as other public questions to be voted upon by the voters of a single municipality.

It may be noted that this statute does not expressly authorize the municipal clerk to fix the date. He is to "provide for the submission of the question."

Plaintiffs argue that because there is neither a general election nor a regular municipal election within 60 to 120 days of either the date of the Appellate Division decision of March 17, 1980, or some appropriate date within 120 days after the initial filing of the petitions, that a special election must be held and on a date other than that fixed by law for primary elections. Under the statutes the time taken by the municipal clerk to review the petitions under *N.J.S.A.* 40:69A-187 does not toll the running of the 60 to 120-day time requirement under *N.J.S.A.* 40:69A-20. Thus, time initially started to run on November 2

---

A review of the existing statutory and case law reveals no specific restriction against this practice. However, since it would involve many people having to vote twice (once in the primary and then again in a different machine in the primary) with different persons eligible for different elections, the resulting confusion to the voter could perhaps constitute a public policy consideration against permitting it to occur.

or, arguably, December 17, 1979. Arguably also, it might have been considered stayed during the court proceedings, although no formal stay was entered except in the appellate court from January 18, 1980 to March 17, 1980.

In considering whether a date other than the primary date is required, we must look to the pertinent definitions in *N.J.S.A.* 19:1–1. That section defines certain terms used in the election statutes and "As used in this title." Therefore, it applies unless expressly indicated to the contrary by the language of a particular section, throughout all of the sections and subsections of the election statutes.

.  .  .  .  .  .  .  .

"*General election*" means the annual election to be held on the first Tuesday after the first Monday in November.

"Primary election" means the procedure whereby the members of a political party in this State or any political subdivision thereof nominate candidates to be voted for at general elections, or elect persons to fill party offices, or delegates and alternates to national conventions.

"Municipal election" means an election to be held in and for a single municipality only, at regular intervals.

"Special election" means an election which is not provided for by law to be held at stated intervals.

"Any election" includes all primary, general, municipal and special elections as defined herein.

.  .  .  .  .  .  .  .

The date set by the borough clerk is not the next general election date (that being November 4, 1980) nor is it the next regular municipal election. Under *N.J.S.A.* 19:1–1, a municipal election is an election held in and for a single municipality only, at regular intervals. That is an election held for no other purpose than for that municipality. Primary elections are specially and separately defined by statute. They are to be held on the Tuesday after the first Monday in June. *N.J.S.A.* 19:2–1. In a primary election only those persons registered or eligible to register as members of a "political party" as defined in *N.J.S.A.* 19:1–1 are entitled to vote. *N.J.S.A.* 19:23–45. Furthermore,

there is no authority for the county clerk to include any other questions or candidates on a sample primary ballot or the primary ballot. See, *e. g., N.J.S.A.* 19:23–23 to 25, 19:23–30 and 19:23–31. *Cf. N.J.S.A.* 19:23–21 and 28. A primary election is not truly open to all registered voters of the municipality. It cannot be deemed a regular municipal election. See *N.J.S.A.* 19:23–40, which refers to the time and place of holding the primary election *"for all political parties"* (emphasis supplied).

Significantly the Legislature used the terms "general or regular municipal election" in *N.J.S.A.* 40:69A–20. It did not use the phrase expressly defined in *N.J.S.A.* 19:1–1 of "any election." That phrase would obviously include all primary, general, municipal and special elections. The election law statutes and the referendum provisions of *N.J.S.A.* 40:69A–20 must be read *in pari materia.* In enacting legislation the Legislature is presumed to be familiar with its own prior enactments. *Brewer v. Proch,* 53 *N.J.* 167, 174 (1969); *In re Mercer County,* 172 *N.J.Super.* 406 (App.Div.1980), and *Caldwell v. Rochelle Park Tp.,* 135 *N.J.Super.* 66, 74 (Law Div.1975). It is therefore apparent that the Legislature did not intend that a primary election (which is essentially a political party election, see *N.J.S.A.* 19:1–1, 19:23–40, 19:23–45 and 19:23–45.1) and a regular municipal election would be synonymous.

The provisions of the Faulkner Act "cannot be construed as an entirely independent legislative scheme, separate and apart in every respect from the general election laws, but necessarily depends upon them." *Pritel v. Burris,* 94 *N.J.Super.* 485, 492 (App.Div.1967); *Horwitz v. Reichenstein,* 15 *N.J.* 6, 10 (1954). The election laws are considered as being *in pari materia,* an integrated whole. *In re Keogh-Dwyer,* 106 *N.J.Super.* 567, 572 (Law Div.1969), aff'd 54 *N.J.* 523 (1969), and *Rafferty v. Schatzman,* 81 *N.J.Super.* 58, 63 (Law Div.1963), aff'd 81 *N.J.Super.* 64 (App.Div.1963). There is no legislative intent in *N.J.S.A.* 40:69A–20 to repeal or modify the provisions of *N.J.S.A.* 19:1–1.

Intention to repeal a prior statute must be manifest, since repeals by implication are not favored. *State v. States*, 44 *N.J.* 285, 291 (1965); *In re Mercer County*, *supra*, 172 *N.J.Super.* at 409–410.

■ Even though no statute speaks directly of a prohibition of the use of the primary date for elections and no reported case in this State has been found deciding the point, the statutory framework and the definitions and terms used make it clear that the primary date is not to be used. Accordingly, because there is not a general or regular municipal election within the time framework of *N.J.S.A.* 40:69A–20, a special election within that time framework must be scheduled and held.

In addition to the legal requirement for a special election there are the obvious practical reasons militating against holding the election under that statute on June 3, 1980. Voters receiving sample primary ballots from the county clerk might conclude that the question will not be acted upon on the primary election date. Certain voters might also refrain from voting on a primary election date because of an aversion to declaring themselves for either political party and a desire to remain "independent." That factor would compound the confusion of even attempting to vote on the referendum question on primary date if permitted by the statutes. The statutes (which so precisely use and define terms) do not allow or contemplate the primary date being so utilized.

Furthermore, problems arise from the form of public notice required prior to the primary election by *N.J.S.A.* 19:23–45.1, which reads:

> a. The county commissioner of registration in each of the several counties, shall cause a notice to be published in each municipality of their respective counties in a newspaper or newspapers circulating therein. The notice to be so published shall be published once during each of the 2 calendar weeks next preceding the week in which the fiftieth day next preceding the primary election of a political party occurs.

b. The notice required to be published by the preceding paragraph shall inform the reader thereof that no voter, except a newly registered voter at the first primary at which he is eligible to vote, or a voter who has not previously voted in a primary election may vote in a primary election of a political party unless he was deemed to be a member of that party on the fiftieth day next preceding such primary election. It shall further inform the reader thereof that a voter who votes in the primary election of a political party or who signs and files with the municipal clerk or the county commissioner of registration a declaration that he desires to vote in the primary election of a political party shall be deemed to be a member of that party until he signs and files a declaration that he desires to vote in the primary election of another political party at which time he shall be deemed to be a member of such other political party. The notice shall also state the time and location where a person may obtain political party affiliation declaration forms.

The subsection b requirements would conflict with the notice of the special election to be given to *all* legally qualified or registered voters in the Borough of Fair Lawn. *N.J.S.A.* 40:69A–25. The resultant confusion could only do injustice to the very purposes behind the petition and referendum laws. *See Sparta Tp. v. Spillane,* 125 *N.J.Super.* 519, 523 (App.Div.1973), certif. den. 64 *N.J.* 493 (1974); *see, also, Cuprowski v. Jersey City,* 101 *N.J.Super.* 15 (Law Div.1968), aff'd 103 *N.J.Super.* 217 (App.Div.1968), certif. den. 53 *N.J.* 80 (1968); *D'Ascensio v. Benjamin, supra.*

▮ The court concludes, therefore, that the primary date is not only an improper date under the statutes, but is inappropriate for those practical reasons for the holding of a special election. Primary elections are just for that purpose, primaries. The court also finds no merit in the argument of counsel for defendants that this is a nonjusticiable question. The court can review the discretion of the municipal clerk or the municipality. *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N.J.* 433, 474–476 (1952), *cert. den.* 344 *U.S.* 838, 73 *S.Ct.* 25, 97 *L.Ed.* 652 (1952), and *Stone v. Wyckoff, supra,* 102 *N.J.Super.* at 34, and indeed is obligated to do so. What must be remembered in considering

this case, notwithstanding the strenuous opposition throughout these proceedings by defendants, is that the real issue is not whether there should or should not be a change of government in Fair Lawn, but whether the citizens of Fair Lawn, the registered voters, will be allowed to express their vote one way or the other on a public question at an election authorized by statute.

Normally the court, in a case such as this, absent special reasons, would give due deference to the borough clerk with respect to the setting of a date for a special election. Because of the time already elapsed, the forthcoming traditional vacation months, the history of this case and the strong adversarial position taken by defendants throughout these proceedings with concomitant delay to date, the court has reluctantly decided, under the particular circumstances of this case, to set a date for a special election. *Pappas v. Malone, supra,* (36 *N.J.* at 7).

The court is also aware (1) that the 20–day period in *N.J.S.A.* 40:69A–187 after the filing of the petitions in November of 1979, technically passed without action; (2) the June 3 primary date is about two months from the date of this decision and 78 days after the Appellate Division decision in this case, and (3) there is a lack of statutory specificity as to the responsibility for fixing the date as opposed to ministerial responsibility for providing for the election. Plaintiffs' argument that the voters of Fair Lawn should have the opportunity, if possible, before the primary, to speak at the polls and determine whether the actions taken on primary day by "members of a political party" (*N.J.S.A.* 19:1–1) as to local elective offices are affected, appears to have some merit. Obviously, if the borough reverts to its prior nonpartisan form of government, the party primaries on June 3, as regards the borough, may be of little or no significance. Elections in this state are commonly held on Tuesdays. Accepting, *arguendo*, the March 17, 1980 date of the Appellate Division decision as the latest possible starting point, and leav-

ing aside the issue of whether any part of the statutory time period has already run, there are only two Tuesdays available between May 16, 1980 (when the minimum 60–day waiting time required by *N.J.S.A.* 40:69A–20 would expire) and the primary date.[7] The court recognizes that May 27 happens to be a Tuesday in the week right before the primary and, absent any showing to the contrary, as such may be too close thereto to allow any necessary transmittal of information to voters or additional proceedings, if necessary. The court therefore determines that May 20, 1980 is a logical and appropriate date[8] for the special election.

---

[7]For purposes of this determination the court accepts the Appellate Division date of March 17, 1980 as the "triggering" date under *N.J.S.A.* 40:69A 20. However, at the same time the court recognizes that there is a strong argument that the time should have begun to run, in whole or in part, prior thereto and been tolled during the pendency of part of the court proceedings and resumed thereafter.

[8]On April 7, 1980 a consent order postponed the date of the special election to May 27, 1980, because the attorney for defendants brought to the court's attention, for the first time, that at sundown on May 20, 1980 the Hebrew faith begins its observance of Shavout (first day of Pentecost) and it is represented by him that certain voters might be affected.