Justice PATTERSON,
concurring in part and dissenting in part.
The majority holds today that the City Clerk of the City of Hoboken did not properly apply the Faulkner Act, N.J.S.A. 40:69A-185 to -192, when he refused to file the petition submitted by the challengers to Ordinance Z-88, and that the Clerk’s action deprived plaintiffs of their rights under that Act, in violation of N.J.S.A. 10:6-2(c) of the New Jersey Civil Rights Act (NJCRA). I concur with the majority that if the City of Hoboken interfered with plaintiffs’ due process right of referendum with respect to the disputed ordinance, or attempted to do so, it did not do so “by threats, intimidation or coercion” within the meaning of N.J.S.A. *487 10:6-2(c), and that plaintiffs accordingly have not presented an interference or attempted interference claim under the NJCRA. Ante at 472-73, 95 A.3d at 222-23. I disagree with the holding of the majority, however, that the City’s actions in this case rose to the level of a deprivation of plaintiffs’ civil rights under N.J.S.A. 10:6 — 2(c). Ante at 481, 95 A.3d at 227-28.
My conclusion is rooted in the nature of the parties’ underlying dispute. In its opinion today, the majority provides significant guidance to municipal clerks in Faulkner Act municipalities when confronted with facially deficient petitions that do not include the required number of signatures. Ante at 469-71, 95 A.3d at 220-21. In the future, municipal clerks will be on notice of the procedure to be followed when such petitions are presented for filing.
Until the ruling of the Appellate Division panel in this case, however, there was no such guidance. When the Hoboken Municipal Clerk reviewed plaintiffs’ petition, there was no authority in our case law defining the procedure to be followed when a petition lacking the number of signatures required by the Faulkner Act was presented. See N.J.S.A. 40:69A-185 (stating that “the petition shall be signed by a number of the legal voters of the municipality equal in number to at least 15% of the total votes cast in the municipality at the last election at which members of the General Assembly were elected”).
Prior case law regarding the adequacy of petitions under the Faulkner Act addressed issues different from that presented by plaintiffs’ petition: the petitioners’ compliance with the requirement that “the names and addresses of five voters, designated as the Committee of the Petitioners” “appear on each petition paper,” pursuant to N.J.S.A. 40:69A-186, or the methods by which municipal clerks should determine “whether the petition [was] signed by a sufficient number of qualified voters,” pursuant to N.J.S.A 40:69A-187. See Hamilton Twp. Taxpayers’ Ass’n v. Warwick, 180 N.J.Super. 243, 244-45, 248, 434 A.2d 656 (App.Div.) (upholding municipal clerk’s rescission of his prior certification of petition *488 signed by requisite number of voters because he found that “the separate petition sheets omitted the names and addresses of the five-member Committee of the Petitioners at the time the voters affixed their signatures”), certif. denied, 88 N.J. 490, 443 A.2d 706 (1981); D’Ascensio v. Benjamin, 142 N.J.Super. 52, 55, 359 A.2d 885 (App.Div.) (rejecting trial court’s specified methods to tally signatures, and authorizing municipal clerk “to adopt any rational means of performing [that] duty, subject to judicial review” under abuse of discretion standard), certif. denied, 71 N.J. 526, 366 A.2d 681 (1976); Lindquist v. Lee, 34 N.J.Super. 576, 577, 581-82, 112 A.2d 801 (Law Div.1955) (upholding municipal clerk’s decision that petition was insufficient, even though it “eontain[ed] a sufficient number of signers,” because it did not show “[t]he names and addresses of the five voters designated as the Committee of the Petitioners ... on each of the petition papers as required by law”); see also Pappas v. Malone, 36 N.J. 1, 6, 174 A.2d 592 (1961) (noting that “in view of the overall uncertainties in the statute and the substantial public interest involved we are not disposed to invalidate the clerk’s rejection for his failure to meet the requirement of specificity”). In these settings in which the petitions clearly included the minimum number of signatures required by N.J.S.A 40:69A-185, appellate decisions nonetheless afforded to municipal clerks broad discretion to apply the technical requirements of the Faulkner Act. Accordingly, prior to this ease, there was no precedential authority that stated precisely how a municipal clerk should process a Faulkner Act petition with a number of signatures that fell facially short of the statutory mark.
Accordingly, when the City of Hoboken invoked the technical requirements of the Act to reject plaintiffs’ patently deficient petitions, it asserted a good faith legal argument in an area of law in which case law provided little guidance. As the majority recounts, plaintiffs’ construction of the Faulkner Act prevailed. In a ruling that would withstand appellate review, the trial court held that the Clerk’s actions had been arbitrary and capricious, and ordered him to process and review the original and supplemental petitions filed by plaintiffs.
*489 In the wake of these developments, plaintiffs achieved their objective. On the City of Hoboken ballot for the November 8, 2011 general election, the referendum to repeal the disputed ordinance appeared as Public Question No. 2. Although the voters rejected plaintiffs’ challenge to the ordinance, the right of referendum created by the Faulkner Act was afforded to plaintiffs and all Hoboken citizens in the very election that plaintiffs had identified in their petition. I respectfully submit that, at most, the position taken by the Municipal Clerk triggered an interference, or attempted interference, with the Faulkner Act right of referendum. I cannot join the majority’s holding that plaintiffs suffered a deprivation of that right under N.J.S.A. 10:6 — 2(c).[1]
The meaning of a deprivation of a right is illustrated by decisions applying 42 U.S.C.A. § 1983, which, unlike the NJCRA, does not address an “interference” or “attempted interference” claim. Federal courts, for example, have consistently found a deprivation of a procedural due process right when a defendant improperly causes an actual loss of that right, as opposed to a delay or a temporary obstruction of its exercise. In Carey v. Piphus, the United States Supreme Court held that two students suspended from public schools without an adjudicatory hearing had sustained a deprivation of their right to procedural due process, warranting an award of nominal damages under 42 U.S.C.A. § 1983, regardless of the ultimate outcome of the case. 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252, 266-67 (1978). The Supreme Court noted that the hearings to which the plaintiffs were entitled did not occur, and that even if their “suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process.” Ibid.; see also J.A. v. Bd. *490 of Educ. for S. Orange & Maplewood, 318 N.J.Super. 512, 524, 723 A.2d 1270 (App.Div.1999) (finding that by “excluding [a student] from its high school without informing her of the grounds of its decision, the South Orange-Maplewood Board of Education violated the due process rights guaranteed to [that student] by the Fourteenth Amendment of the Federal Constitution”).
Similarly, in Burch v. Apalachee Cmty. Mental Health Servs., Inc., the plaintiffs five-month involuntary commitment during which he was “never ... accorded a hearing at which to challenge his commitment and treatment” was sufficient to “state a procedural due process claim upon which relief could be granted” under 42 U.S.C.A. § 1983. 840 F.2d 797, 799, 803 (11th Cir.1988), aff'd, Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). A former college president whose employment was terminated with no adjudicatory hearing was held to have a cognizable claim under 42 U.S.C.A. § 1983 for deprivation of his right to' procedural due process in Hostrop v. Bd. of Junior Coll. Dist. No. 515, 523 F.2d 569, 572, 575-76 (7th Cir.1975), cert. denied, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976). See also Fetner v. City of Roanoke, 813 F.2d 1183, 1185-86 (11th Cir.1987) (finding that dismissal of police chief without pretermination hearing raised valid procedural due process claim under 42 U.S.C.A § 1983); Enter. Fire Fighters’ Ass’n v. Watson, 869 F.Supp. 1532, 1541 (M.D.Ala.1994) (finding that firefighter’s procedural due process rights were violated when he was terminated without being afforded pretermination hearing).
In each of these cases, the plaintiff identified a procedural due process right to a hearing before action could be taken against him or her, and the defendant, clearly contravening the required procedure, did not hold the requisite hearing. These litigants were not simply subjected to delay, inconvenience, or the expense of bringing suit to resolve a close question of law. Each plaintiff was unjustifiably denied the right to defend him or herself at an adjudicatory hearing, thus supporting a claim under 42 U.S.C.A § 1983 for a deprivation of that right.
*491 New Jersey and federal courts applying 42 U.S.C.A. § 1983 also have recognized deprivation claims in a range of settings in which the plaintiff has been denied an identified right. In Endress v. Brookdale Cmty. Coll., the Appellate Division found a deprivation of the plaintiffs First Amendment rights when she was terminated from her employment as a college professor in retaliation for writing a newspaper article critical of her employer. 144 N.J.Super. 109, 118-19, 137, 364 A.2d 1080 (App.Div.1976). In another First Amendment case, the court found that Cinevision Corporation, a concert promoter, “successfully brought a constitutional claim under 42 [t/.S.C'.A.] § 1983” because “the City of Burbank violated Cinevision’s [FJirst [AJmendment rights by disapproving Cinevision’s proposed concerts on the basis of the content of the performer’s expression and other arbitrary factors.” Cinevision Corp. v. Burbank, 745 F.2d 560, 581 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). In Bung’s Bar & Grille, Inc. v. Twp. Council of Florence, the court recognized a deprivation claim rooted in the government’s assessments against the plaintiffs’ property, in violation of the Fourteenth Amendment to the Federal Constitution and of Article I, Paragraph 1 of the New Jersey Constitution. 206 N.J.Super. 432, 457, 502 A.2d 1198 (Law Div.1985).
Police use of excessive force has been held in several cases to constitute a deprivation of the plaintiffs’ Fourth Amendment rights under 42 U.S.C.A. § 1983. See, e.g., Thomas v. Frederick, 766 F.Supp. 540, 553-55 (W.D.La.1991) (finding that police officer deprived plaintiff of her Fourth Amendment rights by violently throwing her against his car, causing her to suffer severe back injury, when plaintiff “was unarmed and made no aggressive move which would have justified [the officer’s] actions”); Mikulec v. Town of Cheektowaga, 909 F.Supp.2d 214, 219-21 (W.D.N.Y.2012) (denying defendant police officers’ motion for summary judgment on plaintiffs Fourth Amendment excessive force claim because officers apparently “smashed” plaintiffs face into patrol car and violently threw him into patrol car while plaintiff was handcuffed); M.D. v. Smith, 504 F.Supp.2d 1238, 1248-49, 1254 (M.D.Ala.2007) *492 (denying defendant police officer’s motion for summary judgment on plaintiffs Fourth Amendment excessive force claim because officer slammed plaintiffs head “into the car with force sufficient to cause [plaintiffs] head to dent the car” when plaintiffs conduct did not suggest that he posed any risk to officer). In each of these settings, the plaintiff did not merely experience delay or confront obstacles as the parties’ legal rights were determined by a court, but was subjected to a complete denial of that right.
To the majority, the fact that plaintiffs were compelled to resort to litigation in order to ensure a vote on the repeal of the challenged ordinance means that they suffered a deprivation of their rights under the Faulkner Act. Ante at 481-83, 95 A.3d at 227-29. The majority relies on cases in which a governmental entity indisputably — in some cases admittedly — violated a statute, ordinance or constitutional provision in seeking to bar the plaintiffs’ activity. In Lippoldt v. Cole, the defendant City of Wichita conceded that it had denied the plaintiffs’ application for a parade permit notwithstanding the fact that its parade ordinance mandated the grant of that permit. 468 F.3d 1204, 1210 (10th Cir.2006). Similarly, in People Against Police Violence v. City of Pittsburgh, although the City of Pittsburgh immediately abandoned its defense of an ordinance that, among other requirements, compelled individuals seeking to engage in expressive activity in public forums to prepay the City’s police costs associated with that activity, the City did not repeal that ordinance or substitute a constitutional alternative in its stead. 520 F.3d 226, 229 (3d Cir.2008). Accordingly, the District Court issued an injunction in plaintiffs’ favor, which the City did not challenge on appeal. Id. at 230. The Third Circuit affirmed the District Court’s holding that plaintiffs were “prevailing parties” under 42 U.S.C.A. § 1988. Id. at 228-29.
In Young v. City of Chicago, the Seventh Circuit addressed issues stemming from a District Court’s decision to enjoin the City of Chicago’s ban on all protests within a perimeter around the site of the 1996 Democratic National Convention. 202 F.3d 1000, *493 1000-01 (7th Cir.2000). The City waited until after the convention was over to seek appellate review, and argued that since the First Amendment issue was moot, it should not be liable under 42 U.S.C.A. § 1988 for attorneys’ fees. Ibid. The Seventh Circuit disagreed, and affirmed the District Court’s award of fees. Id. at 1000-01.[2]
Rogers Grp., Inc. v. City of Fayetteville involved a due process and unconstitutional taking without just compensation challenge to an ordinance that placed limitations on the operations of rock quarries “near” the city limits, as well as within those limits, thus constituting an effort by the city to regulate activities outside of its boundaries. 683 F.3d 903, 904-05 (8th Cir.2012). The constitutional challenge prompted the City of Fayetteville to repeal the portion of its ordinance that attempted to regulate rock quarries located beyond its borders. Id. at 906. The Eighth Circuit held that the plaintiff was a “prevailing party” for purposes of 42 U.S.C.A. § 1988, notwithstanding the City’s abandonment of its defense of the challenged ordinance. Id. at 911-13.
The single case cited by the majority that addresses an election, Diffenderfer v. Gomez-Colon, 587 F.3d 445 (1st Cir.2009), arose from circumstances very different from the setting of this case. There, the plaintiffs challenged the decision made by the State Election Commission of the Commonwealth of Puerto Rico that the ballots for the 2008 election in the Commonwealth — including *494 the elaborate instructions on how to use the “complex and difficult to understand” ballot — would be printed in Spanish only. Diffenderfer v. Gomez-Colon, 587 F.Supp.2d 338, 341-42, 349 (D.P.R. 2008). The District Court certified a class of Commonwealth residents who spoke only English, and held that Spanish-only ballots contravened the Voting Rights Act, the Equal Protection Clause and the First Amendment. Id. at 342, 345-50. The District Court later awarded counsel fees to the plaintiffs. Diffenderfer v. Gomez-Colon, 606 F.Supp.2d 222, 230-31 (D.P.R.2009).
While that award was on appeal, the Commonwealth’s legislature enacted a statute mandating bilingual ballots. Diffenderfer, supra, 587 F.3d at 450. The First Circuit vacated the underlying judgment as moot, but affirmed the award of counsel fees. Id. at 451, 455. It held that the action by the legislature was “a circumstance not attributable to the Commission as an individual administrative entity.” Id. at 452. It also noted that corrective legislation “is generally considered an intervening, independent event and not voluntary action, particularly when the governmental entity taking the appeal, as here, is not part of the legislative branch.” Ibid, The First Circuit’s reasoning is simply irrelevant to this case. Here, defendants took a defensible position on the procedure to be followed upon receipt of a defective Faulkner Act petition, and plaintiffs achieved their objective in the following election.
In short, the majority cites no federal or New Jersey ease law that suggests, let alone holds, that when a governmental authority asserts a viable legal position on an unsettled question of law, and that question is resolved in the plaintiffs favor in time for the plaintiff to exercise the disputed right, the defendant’s action amounts to a deprivation. By the plain meaning of the term as it appears in N.J.S.A. 10:6-2(c), and in the many illustrations provided by case law construing its federal counterpart, a deprivation of the plaintiffs constitutional right is rooted in that plaintiffs loss of the ability to exercise that right.
*495 In contrast to 42 U.S.C.A § 1983, the NJCRA specifically addresses claims premised upon the defendant’s interference or attempted interference with the plaintiff’s “exercise or enjoyment of” his or her “substantive rights, privileges or immunities.” N.J.S.A. 10:6-2(c). In my view, when a defendant has taken a position that requires a plaintiff to spend time, effort and resources in order to resolve a novel legal question, the defendant has — at most — interfered with or attempted to interfere with the plaintiffs rights. If, as the majority suggests, a plaintiff who successfully litigates a previously unsettled legal issue has been “deprived” of a right by virtue of nothing more than the necessity of filing suit, I can discern no meaningful distinction between the provisions of the statute that address deprivation, on the one hand, and interference and attempted interference, on the other. If the Legislature had contemplated a statute that operates in the way that the majority construes it, it would not have limited the reach of the NJCRA as it did. It would have authorized an award of attorneys’ fees to any plaintiff who has successfully litigated a dispute over an alleged governmental interference with a recognized legal right.
Instead, the Legislature carefully distinguished between an interference or attempted interference with a substantive right— which warrants no NJCRA remedy unless achieved “by threats, intimidation or coercion” — and a deprivation of such a right. N.J.S.A. 10:6 — 2(c); see Ramos v. Flowers, 429 N.J.Super. 13, 21, 56 A.3d 869 (App.Div.2012). That is the line that the Legislature drew, and it should, in my view, be preserved.
I respectfully submit that the majority applies the NJCRA beyond its intended parameters when it construes a municipality’s assertion of a good faith legal position in an area of unsettled law to be a deprivation of plaintiffs’ civil rights within the meaning of N.J.S.A. 10:6 — 2(c). Accordingly, I would affirm the determination of the Appellate Division in its entirety, and to the extent that the majority reverses that determination, I respectfully dissent.
*496 For affirmance in part/reversal in paH/remandment — Chief Justice RABNER and Justices ALBIN, FERNANDEZ-VINA and RODRÍGUEZ (temporarily assigned) — 4.
For concurrence in part/dissent in part — Justices LaVECCHIA and PATTERSON — 2.
Not Participating — Justice CUFF (temporarily assigned).

 The majority depicts this conclusion to be a contention that qualified immunity should bar injunctive relief in this case. Ante at 484-86, 95 A.3d at 229-30. That characterization is incorrect; I offer no such argument. Instead, I part company with the majority's conclusion that the conduct at issue in this case constitutes a “deprivation” under NJ.S.A. 10:6-2(c).

 McQueary v. Conway, 614 F.3d 591 (6th Cir.2010), cert. denied, 562 U.S.-, 131 S.Ct. 927, 178 L.Ed.2d 752 (2011), also cited by the majority, addresses a different issue not remotely raised by this case. There, the Sixth Circuit reviewed a District Court's denial of attorneys' fees under 42 U.S.C.A. § 1988 to a member of the Westboro Baptist Church. Id. at 595-96. The plaintiff had asserted an overbreadth challenge to a state law barring disturbances within three hundred feet of the site of a funeral or burial. Ibid. The District Court denied the fee application, reasoning that the plaintiff’s proposed funeral picketing would violate other provisions of Kentucky law that he declined to challenge. Id. at 596. The Sixth Circuit rejected that conclusion, noting that the District Court had improperly assumed that the plaintiff would violate unchallenged provisions of state law, and remanded the matter for a determination of whether the plaintiff was a "prevailing party” under 42 U.S.C.A. § 1988. Id. at 602-05.